No. 63.—LEWIS CODY, plaintiff in error, vs. W. C. W. QUAR-TERMAN, executor of Michael T. Dawsey, defendant.

[1.] A defendant in ejectment, where the relation of landlord and tenant is established between himself and the plaintiff, is estopped from denying the title of the plaintiff, and the plaintiff may recover upon the admission of title which grows out of that relation.

[2.] A parol lease of lands for more than three years is void by the Statute of Frauds, and has the force and effect of an estate at will, which for the purposes of notice to quit, and some other purposes, has been by Judicial construction converted into a tenancy from year to year.

[3.] An estate at will, made so by the operation of the Statute of Frauds, is assignable; not so of an estate at will at Common Law, created by the act of the parties.

[4.] An estate at will, by the operation of the Statute of Frauds, determines upon the death of the tenant, but if he die within the year, the interest in the tenancy for the remainder of the year passes to his legal represent-atives.

Statutory action for recovery of lands and profits, in Chatham Superior Court. May Term, 1852, and motion for new trial. Decided by Judge HENRY R. JACKSON.

This was an action under the Statute, for the recovery of lands, and the profits thereof, brought by William E. W. Quarterman, executor of W. T. Dawsey, the defendant in error, against James Cody, plaintiff in error. This cause was tried upon the appeal at the May Term, 1852, when the plaintiff in the Court below, offered in evidence the following testimony:

Samuel B. Sweat, a witness sworn on behalf of plaintiff, testified that the plat made by him and shown to him in Court, dated on or about the eighteenth day of December, in the year eighteen hundred and forty-four, did not exactly identify the premises as described in the declaration, but sufficiently so to show identity, and that he made the plat. On cross-examination, he testified that Samuel Bandy was on the premises in dispute prior to June, 1841, and that the plat shown him by defen-

Cody *vs.* Quarterman.

dant's counsel, made pursuant to deed hereinafter stated, dated on or about the nineteenth February, 1835, was substantially for the same premises in dispute in the other plat described.    Both plats were put in testimony.    Charles Chapman, sworn on the same side, testified that ——— McGee got permission from Dawsey to build a house on the premises; that he built and died there, and that after his death ——— Moira married his (McGee's) widow, and so got possession.    Witness did not know how Bandy got there, and on cross-examination stated that Bandy lived there ten or fifteen years ago.

George Moore, sworn on same side, testified that he was living with Dawsey when McGee called at Dawsey's house and leased the land for five years.    Heard the whole conversation. Dawsey refused to sell, but agreed to lease the land to him— that McGee built on the land as tenant of Dawsey.    Dawsey went with McGee and showed him where to build.    (Defendant's counsel here asked witness how he knew that Dawsey showed McGee where to build.    Witness replied that Dawsey told him so—to which testimony defendant's counsel objected.)    Witness further testified that McGee died, leaving his widow in possession—that the widow married Moira, who thus got possession—and Moira sold to Bandy the unexpired term.    There was no written lease.    On cross-examination, stated he did not know of his own knowledge how Bandy got into possession.

A. Holliday, sworn on same side, testified that he went with McGee to Dawsey to get him to let McGee have the land, as McGee was a very poor man.    , Dawsey refused to sell, but verbally leased the land to McGee, McGee agreeing to build on the land and give up the building at the end of five years—that McGee did build, and moved into the house and died, leaving his widow in possession.    Moira married the widow some eight months after McGee's death, and afterwards sold to Bandy the unexpired term.    The lease to McGee was verbal, and some thirteen or fourteen years before the commencement of this suit. Bandy came to witness and asked about buying from Moira, and witness asked him why he did not buy from Dawsey.    Bandy replied that Dawsey would not sell.    Premises were worth

about seventy-five dollars rent per year. On cross-examination witness stated (after several questions put to him,) that Bandy told him that he knew of Moira's holding under Dawsey, and that Bandy bought lease of premises from Moira, who held under Dawsey, of which Bandy was aware, and that this might have been thirteen or fourteen years ago. Plaintiff's counsel then introduced (under notice to produce,) the following deed:

STATE OF GEORGIA, CHATHAM COUNTY.

This Indenture, made the thirtieth day of December, in the year of our Lord one thousand eight hundred and forty-two, between Samuel Bandy of the State and County aforesaid, of the first part, and Andrew McIntyre, of the State and County aforesaid, of the second part, witnesseth that the said Samuel Bandy for and in consideration of the sum of three hundred and thirty-eight dollars, to him in hand paid by the said Andrew McIntyre, at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged; hath granted, bargained, sold, aliened, remised, released and confirmed, and by these presents doth grant, bargain, sell, alien, remise, release and confirm unto the said Andrew McIntyre, and to his heirs and assigns, all those two tracts of land—one containing five hundred acres, situate, lying and being in the County of Chatham and State aforesaid, bounded north by lands of J. B. Read and south by lands of the estate of Mongin's, east by the Ogechee River, and west by unknown lands and Dr. Read's land. The other tract containing twenty-five acres, situate, lying and being in the County of Chatham and State of Georgia, bounded north by Rascoe's land, south by Rose's land, east by Rascoe's land, and west by McLeod's land, on the Darien road, opposite the twelve-mile post in Ogechee District, together with all and singular the houses, out-houses, edifices, buildings, stables, yards, gardens, liberties, privileges, easements, commodities, emoluments, hereditaments, rights, members, and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits, and all the estate, right, title, interest, property or

Cody *vs.* Quarterman.

possession, claim and demand whatsoever, in law or in equity, of the said Samuel Bandy, of, in or to the same, or any part or parcel thereof, with the appurtenances. To have and to hold the said two tracts of land, and all and singular other the premises hereby granted, bargained, sold, aliened and confirmed, with the hereditaments and appurtenances, unto the said Andrew McIntyre, his heirs and assigns, to the only use and behoof of the said Andrew McIntyre, his heirs and assigns forever, and to and for no other use, intent or purpose whatsoever. And lastly, the said Samuel Bandy and his heirs, the said two tracts of land and premises unto the said Andrew McIntyre, his heirs and assigns, against him the said Samuel Bandy, his heirs, and against all and every other person or persons whatever, shall and will warrant and forever defend by these presents. In witness whereof, the said Samuel Bandy hath hereunto set his hand and seal the day and year first above written.

SAMUEL BANDY, [L. S.]

Sealed and delivered in presence of

JOHN N. GOW, }
ISAAC RUSSELL, J. P. }

*Georgia, Chatham County—Clerk's Office, Superior Court.* Recorded in Book A. A. A., folios 497 and 498, this 17th May, 1843.

EDWARD G. WILSON, Dep. Clerk Sup. C. C. C.

Plaintiff's counsel also introduced John Cooper, who testified that Bandy sold to McIntyre, and that John Murchison, as executor of McIntyre, put the defendant, Cody, into possession, and that Murchison, as executor of McIntyre, was receiving $100 per annum rent. It was admitted on both sides that plaintiff, Quarterman, and John Murchison, were properly qualified executors of their respective testators—and it was further admitted that plaintiff, Quarterman, claimed but the 26½ acres delineated in the first named plat, and that defendant, Cody, claimed only the 25 acres mentioned in the second plat above named.

Plaintiff's counsel having closed, defendant's counsel introduced Levi S. D'Lyon, Esquire, who testified that Bandy claim-

ed the land ten or fifteen years ago, and also as far back as 1835; that in 1840, Bandy was living there. The following record was then introduced in evidence by defendant's counsel, and shown to the witness:

GEORGIA, CHATHAM COUNTY.

*To the Honorable the Judge of the Superior Court of Chatham County:*

The petition of John Doe, sheweth that Richard Roe, of said County, hath endamaged your petitioner in this, to wit: For that whereas Samuel Bandy, on the twentieth day of February, eighteen hundred and thirty-five, in the County aforesaid, had demised to your petitioner all that lot and tract of land situate, lying and being in the County of Chatham and State aforesaid, containing twenty-five acres of land, more or less, lying on the Ogechee Road, opposite to James Rascoe, bounded on the westward by                                   to the north by James Rascoe's land, and to the south by lands of Robert Statham, with the appurtenances, unto your petitioner and assigns, from the said twentieth day of February, in the year aforesaid, until the full end and term of seven years next ensuing, and fully to be complete and ended. By virtue of which said demise, your petitioner entered into the said lot, tract or parcel of land, containing as aforesaid twenty-five acres, more or less, lying on the Ogeechee Road, opposite to James Rascoe's, bounded westwardly                                   on the north by James Rascoe's land, and on the south by lands of Robert Statham, with the appurtenances, and was thereof possessed, and your petitioner being so possessed thereof, the said Richard Roe afterwards, to wit, on the twenty-first day of February, in the year aforesaid, with force and arms, entered into and upon the said lot, tract or parcel of land in the County aforesaid, and described as aforesaid, which the said Samuel Bandy had demised to your petitioner in manner aforesaid, for the term aforesaid, which is not yet expired, and ejected your petitioner therefrom, and other wrongs to your petitioner then and there did, against the peace of the said State, and to the damage of your petition-

Cody *vs.* Quarterman.

er one thousand dollars. Wherefore your petitioner prays process may issue requiring the said Richard Roe to appear and answer in the premises.

WILLIAM H. STILES, for Petitioner.

Mr. MICHAEL DAWSEY:

Sir—I am informed that you are in possession of, or claim title to, the premises in this declaration of ejectment mentioned, or to some part thereof, and I being sued in this action as casual ejector only, and having no claim or title to the same, do advise you to appear in May term next, in the Superior Court of Chatham County, and by some attorney of said Court to cause yourself to be made defendant in my stead, otherwise I shall suffer judgment therein to be entered against me by default, and you will be turned out of possession.

Your obedient servant,

RICHARD ROE.

GEORGIA, CHATHAM COUNTY:

*To the Sheriff of said County, Greeting:*

JOHN DOE, on the demise of SAMUEL BANDY.

[L. S.]       *vs.*       } *Ejectment.*

RICHARD ROE, i. e. MICHAEL T. DAWSEY, tenant.

You are hereby required to summon the defendant, Richard Roe, i. e. Michael T. Dawsey, personally or by attorney, to be and appear before the Superior Court for the County of Chatham, to be holden at the Court House in the City of Savannah, on the third Monday in May next, then and there to answer the plaintiff on the merits of the foregoing petition. In default of such appearance, the said Court will proceed as to justice shall appertain. Witness, the Honorable Robert M. Charlton, Judge of said Court, this twenty-second day of April, eighteen hundred and thirty-six.

WILLIAM H. STILES, plaintiff's Attorney.

JAMES B. LEWIS, Dep'y Clk.

Cody *vs.* Quarterman.

.GEORGIA—Chatham County,    }
        *Sheriff's Office*, 23d *April*, 1836. }

I have served a copy of the within writ on Michael T. Dawsey personally this day.

                    JNO. BARTHELMESS, Dep'y Sheriff C. C.

GEORGIA, CHATHAM COUNTY :
                    *In Superior Court—May Term,* 1836.
RICHARD ROE, i. e. MICHAEL T. DAWSEY, tenant in possession. }
                    *ats*                          }
JOHN DOE, on the demise of JESSE BANDY.

And the said Michael T. Dawsey, by McAllister and Henry, his attorneys, confessing lease, entry and ouster, and relying on the title only, comes and defends the force and injury, when, &c., and says that he is not guilty of the said supposed trespass and ejectment above laid to his charge, or any part thereof, in manner and form as the said John Doe hath above thereof complained against him, and of this the said Michael T. Dawsey, puts himself upon the country, &c.

                    McALLISTER & HENRY, Def'ts Att'ys.

(Indorsed.) *Discontinued*—The record of said suit on the docket and minutes of the Court, shewing a rule of survey on premises at May Term, 1836, a continuance of the case by Bandy at January Term, 1837, in consequence of the plat of re-survey being mislaid, another continuance of the case by Bandy at the May Term, 1837, and subsequent continuances *by the Court,* (one of Dawsey's attorneys having in the mean time succeeded to the Bench,) until January Term, 1841, when said case was marked discontinued on the docket and minutes of the Court. Plat of re-survey was with the record, as above stated, then shown to the witness.

The witness was then asked if he identified the plat, and answering in the affirmative, was also asked the ground of the discontinuance of said suit. Of his own knowledge, (or except from hearsay,) he did not know why suit was discontinued. He had had a conversation with both parties, and understood that a settlement had been effected, the terms of which he did not know. Bandy was awhile absent in Florida, and on his return finding

Dawsey in possession, he commenced his suit against Dawsey, the dispute being, as witness believed, for only a part of the 25 acres, and not for the buildings.   Witness also testified that he knew John W. Turner, and defendant's counsel then introduced in evidence the following deed from John W. Turner, to Samuel Bandy.

STATE OF GEORGIA, *Chatham County.*—This indenture, made the nineteenth day of February, in the year of our Lord one thousand eight hundred and thirty-five, between John W, Turner, of the city of Savannah, County of Chatham, and State of Georgia, of the first part, and Samuel Bandy, of the County of Chatham, and State of Georgia, of the second part, witnesseth that the said John W. Turner, for and in consideration of the sum of one hundred dollars to him in hand paid by the said Samuel Bandy, at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and thereof and of and from every part or parcel of the same, the said John W. Turner doth acquit, release and discharge the said Samuel Bandy, his heirs, executors and administrators, by these presents, and the said John W. Turner hath granted, bargained, sold, aliened, remised, released and confirmed, and by these presents doth grant, bargain, sell, alien, remise, release and confirm unto the said Samuel Bandy, and to his heirs and assigns, twenty-five acres of land, be the same more or less, lying on the Ogechee Road opposite to James Rascoe, bounded to the westward               to the north by James Rascoe's land, and to the south by lands of Robert Statem, and lying in said County of Chatham; together with all and singular the houses, out-houses, edifices, buildings, stables, yards, gardens, liberties, privileges, easements, commodities, emoluments, hereditaments, rights, members and appurtenances whatsoever thereto belonging or in anywise appertaining; and the reversion and reversions, remainder and remainders, rents, issues and profits, and all the estate, right, title, interest, property or possession, claim and demand whatsoever in law or in equity, of the said John W. Turner, of, in or to the same, or any part or parcel thereof, with the appurtenances: To have and to hold the said

twenty-five acres of land and all and singular other the premises hereby granted, bargained, sold, aliened and confirmed, with the hereditaments and appurtenances, unto the said Samuel Bandy, his heirs and assigns, to the only use and behoof of the said Samuel Bandy, his heirs and assigns forever, and to and for no other use, intent or purpose whatsoever. And lastly, the said John W. Turner and his heirs, the said twenty-five acres of land and premises unto the said Samuel Bandy, his heirs and assigns, against him the said John W. Turner, his heirs, and against all and every other person or persons whatsoever, shall and will warrant and forever defend by these presents. In witness whereof, the said John W. Turner hath hereunto set his hand and seal the day and year first above written.

JOHN W. TURNER, [L. S.]

*Sealed and delivered in the presence of*

M. CHEVRIER,
HENRY J. VALLEAU, J. P.    } *Recorded 6th April, 1835.*

Edward Bourquin, on the same side, testified that Bandy was in possession of the premises in 1840, 1841, or 1842, and that he understood from Bandy that he claimed under Turner—that Dawsey told witness he had bought a floating balloon, and that not knowing where to locate it, he might as well locate it at this corner—meaning the premises in dispute. Dawsey told witness he had bought of F. M. Stone, who had bought at tax collector's sale. On cross-examination he stated that the balloon did light there, and that Dawsey got into it.

The cause being closed, on the evidence, counsel on both sides argued the case, and counsel for defendant requested the Court to charge the Jury that even if they should believe that Samuel Bandy was ever the tenant of said Dawsey, directly or remotely, then that the defendant, claiming through Bandy, could after the expiration of the tenancy and disclaimer of Bandy, rely upon title paramount in Bandy prior to said tenancy, to wit: the title of Bandy, acquired from John W. Turner, and that defendant was not estopped from denying Dawsey's title. The Court refused so to charge, except with the qualification that

Cody *vs.* Quarterman.

any disclaimer or adverse holding of Bandy, to be effectual as against Dawsey, must have been brought home to the knowledge of Dawsey.

The Jury returned a verdict for the plaintiff, for the premises, twenty-six and a half acres claimed by him and for mean profits, $325. Defendant's counsel moved for a new trial, upon the following grounds :

1. Because of misdirection by the Judge, in that, he charged the Jury, that if they found that Samuel Bandy was ever the tenant of Dawsey, directly or remotely, then that the defendant claiming through Bandy, could not after the expiration of said tenancy and disclaimer by Bandy, rely upon title paramount in Bandy prior to said tenancy, to wit: the title of Bandy acquired from John W. Turner, and that defendant was estopped from denying Dawsey's title.

2. Because there was not sufficient evidence of Bandy's tenancy to Dawsey, no title in the latter having been shown, and no entry under him by virtue of any estate, demise, lease or title recognized in law.

3. Because the verdict in said case, was contrary to the evidence, the law and the justice of the case.

This motion for new trial, was argued before Judge *Jackson*, in vacation, by consent, and a new trial refused.

To this decision, exceptions were filed by the plaintiff in error, and the following errors assigned:

1. That the Court below erred in refusing the motion for a new trial, because no evidence was produced to show title in the plaintiffs below, either by possession, grant, deed, devise or any other muniment of title.

2. That the Court below erred in refusing the motion for new trial, because there was no evidence produced to show a tenancy by Bandy, or those claiming under him, which was valid and effectual in law, to establish the relation of landlord and tenant between him or them, and the plaintiff below or his testator.

3. Because if the evidence did conduce to show that such tenancy as is alleged, did at any time exist, it was determined, if

it existed before the 22d day of April, 1836, (eighteen hundred and thirty-six,) by the entry of Dawsey on the premises, and the bringing of the action of ejectment by said Bandy; if it occurred during the pendency of said action of ejectment, its pendency was notice to Dawsey of said Bandy's adverse claim, and the discontinuance of the suit, leaving Bandy in possession of the land without any reservation of rent; without any stipulation for the re-delivery of possession, and without any effort on the part of Dawsey to regain possession, was a determination of such tenancy; and coupled with the uncontradicted proof of a settlement between the parties, was conclusive evidence of Dawsey's acquiescence in it.

4. Because, even if the evidence on the part of the plaintiff in the Court below, showed *prima facie* a case of such tenancy, the evidence on the part of the said James Cody, (in all respects competent under the pleadings and issue in said cause,) showed in fact, and by clear legal intendment and presumption, that no such tenancy could have existed, and entirely negatived and destroyed the counter proofs and presumptions, if any, by showing that the entry and claim of said Bandy, were not in subordination, but adverse to the claim and possession of said Dawsey.

5. Because there was no evidence to estop the said James Cody, from showing title out of Dawsey, or his executors, but on the contrary, the evidence showed a lawful possession in said James Cody, derivatively through Bandy, founded on title paramount, good and conclusive in said cause, against the said plaintiff, in the Court below.

6. That the verdict of the Jury in the Court below, was wholly against the evidence, the law, and the justice of the case, and because the whole evidence in the cause left the burden of proof upon the plaintiff in the Court below, to show title in his testatator, which having failed to do, the said verdict was wholly without evidence to sustain it.

J. McPherson Berrien, Harden and Lawton, for plaintiff in error.

Cody *vs.* Quarterman.

W. B. Fleming and E. H. Bacon, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The plaintiff below, in this action of ejectment, exhibited no muniments of title, but relied for recovery on his character of landlord to the defendant.   That is, having as he claimed, proven that the .defendant came into possession derivatively under his lessee, he also claimed that the relation of landlord and tenant was established, and that he was entitled to recover upon the legal proposition, that a tenant is estopped from denying the title of his landlord.   Both parties agree as to the soundness of that proposition.   Nor do we question but that he is entitled to recover upon the admission of title in him, which grows out of the relation of landlord and tenant, if according to the law applicable to the facts of the case, that relation did exist. The question made by the rule for a new trial, upon which the cause turns, is therefore this, to wit, was the relation of landlord and tenant made out by the proofs, in the judgment of the law upon those proofs?   The plaintiff in error in the rule and in the argument, insists that it was not, upon several grounds.   The presiding Judge refusing the rule, denied these grounds.   In his charge to the Jury, he instructed them that if they found that the tenancy existed remotely or directly in the defendant under the plaintiff, he (the plaintiff,) was entitled to recover.   To find the facts, was of course the province of the Jury, and they were properly submitted to the Jury; but it was the duty of the Court to instruct as to the legal effect of the facts to be found.   He gave no instruction as to the legal effect of the facts, and was therefore understood by them to rule that if the facts relied upon by the plaintiff below to establish the relation of landlord and tenant were found by them, then in Law, the relation was also made out.

The rule for the new trial, in its main ground denies that the facts, if true, created a tenancy in law in the defendant, under the plaintiff, and therefore claims that the verdict was contrary to law.   The refusal to grant the rule, then, made up the issue

between the presiding Judge and the plaintiff in error.    We are to inquire, therefore, whether in the judgment of the law, upon the testimony which we find in the record, the relation of landlord and tenant was established.    To determine this question, it is necessary to state first what was proven.

[2.] It was proven that the testator of the plaintiff, Michael T. Dawsey, a number of years before this suit was instituted, but the precise time not stated, by a *verbal* contract, leased the premises in dispute, to a man by the name of McGee, for five years, in consideration of the erection of a house upon them, who went into possession under the lease.    He built the house, and died.    How long he was in possession before his death, is not shown.    The widow of McGee, at the death of her husband, was in possession, and continued in possession for eight months, when she intermermarried with Moira, who thus acquiring possession, sold what the witness called the *unexpired lease*, to Bandy.    Bandy went into possession after his purchase from Moira, and conveyed the land to McIntyre, who died, and whose executor, Murchison, put the defendant Cody, into possession. There is other testimony to which I may advert; but the above statement contains the evidence upon which the plaintiff below relies, to establish the relation of landlord and tenant between the testator of the plaintiff, Dawsey, and the defendant. The counsel for the plaintiff in the action say, that having proven a lease from Dawsey to McGee, and traced the possession through McGee's wife and Moira to Bandy, before the expiration of the lease, and from Bandy through McIntyre, to the defendant, the defendant was derivatively the tenant of Dawsey, and Dawsey his landlord.    That is their case.    That *possession* is traced by the evidence from McGee, through his wife, Moira, Bandy, and McIntyre to the defendant, is true; but that the possession thus traced, when the law is applied to its various stages, can be construed into a continuous tenancy under Dawsey, is what we are not able to affirm.    As the tenancy of the defendant under Dawsey, in our judgment depends altogether upon the character of the lease, as it is called, from him to McGee, it is of primary importance to determine the character of that lease.    The

real question is determinable alone upon the nature of that lease, and the rules of law which are applicable to its being, and its determination.    It was a *verbal* lease, and for the definite period of *five years*.    By the Statute of Frauds, "all leases, estates, interests of freehold, or terms of years, or any uncertain interest of, in, to or out of any messuages, manors, lands, tenements, or hereditaments, made or created by livery and seizin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in Law or Equity, be deemed or taken to have any other or greater force or effect ; any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding." *Prince's Dig.* 914.    By this section, all leases of land by parol are void ; and as this lease between Dawsey and McGee, was by parol, as a contract of lease of lands, it is void.    The 2d section of the Statute of Frauds, excepts from the operation of the 1st section, "all leases not exceeding the term of three years from the making thereof, whereupon the rent reserved to the landlord during such term, shall amount unto two-third parts at the least, of the full improved value of the thing demised." *Prince*, 914.    This lease does not come within the exception of the 2d section.    First, because there is no evidence of the reservation of rent to the amount of two-third parts of the improved value of the premises.    It is true, that the building of a house was the consideration proven for the lease, and it may be possible that this improvement was equivalent to two-thirds of the improved value of the land, yet there was no evidence to that effect.    But secondly, this lease cannot be within the exception, because it was not a lease for a term not exceeding three years, it being proven that it was a lease for more than three, to wit, *five* years.    Being void as a lease, what was it ?  I answer, a *tenancy at will ;* for the Statute declares, that a parol lease shall have the force and effect of a lease or estate at will only.    The construction which the Courts have put upon the estate at will thus created under the Statute, is that it is not in all respects

such a tenancy at will, as may be created by contract between the parties. Driven to legislate, by the extreme hardships of the case, the Courts of Great Britain, before the era of American Independence, construed estates at will, becoming such under the Statute, to have the effect of tenancies from year to year, in order to protect the tenant from the consequences of a sudden determination of the estate by the landlord.

[3.] The decisions have gene the length of holding, that the tenant is entitled to notice to quit, and to emoluments; and that the landlord shall not lose his rent, by a determination of the estate within the year, on the part of the tenant. And further, that although an estate at will, outside of the Statute, was not assignable, yet an estate at will, by virtue of the Statute, may be assignable. 4 *Kent's Com.* 112, 113, 114, 115. *Preston on Abstracts of Title,* vol. 2, *p.* 25. 3 *Burrow,* 1609. 8 *Term R.* 3. 2 *Caine's R.* 169. 7 *Johns. R.* 4. 8 *Cow. R.* 75. *Roberts on Frauds,* 243, 244. So, also, although the agreement as to the lease be void, by the Statute, as to to its duration, and it is but a tenancy at will, yet in other respects, it regulates the terms on which the tenancy subsists; for example, as to the rent, the time of the year when the tenant is to quit, &c. *Riggs vs. Bell,* 5 *Term R.* 471. *Greenleaf's Ev.* vol. 1, §263.

Although a strict tenancy at will is not favored by the Courts, and by construction has lost many of the stringent peculiarities which originally characterized it, being apart from the Statute, generally held in effect, a tenancy from year to year, yet such an estate may still be created by the express agreement of the parties. 4 *Taunt. R.* 128. 5 *B. and A.* 604. 1 *Dowl. and R.* 272. 2 *Black.* 118, (*note* 7.)

[4.] The one peculiarity which I deem it needful especially to note in reference to this case, is, that estates at will determine by the death of the tenant. They are so determined, whether strictly an estate at will by agreement between the parties, or become such by the operation of the Statute of Frauds. The judicial construction which has given to the latter, for certain purposes, the effect of a tenancy from year to year, does not prevent this result. As to their determinable quality, by death,

estates at will, under the Statute, are not affected by that construction. *Blackstone,* enumerating the different ways in which estates at will are determined, says—" or which is *instar omnium* the death or outlawry of either lessor or lessee." 2 *Black. Com.* 146. 5 *R.* 116. *Co. Litt.* 57, 62.

By the death of McGee, the estate which he acquired from Dawsey was at an end, and could not devolve upon any one. As between him and his wife, or Moira and himself, or any other persons and himself, claiming the possession through Moira, there could be no privity. The relation between McGee and Dawsey, as landlord and tenant, ceased at McGee's death, and if it existed afterwards between Dawsey and Moira, or between Dawsy and Bandy, it existed by virtue of a new contract, of which we find no evidence in the record. These things being so, the defendant, who went in under the vendee of Bandy, cannot be the tenant of Dawsey; as between him and Dawsey the relation of landlord and tenant did not exist, and he was not estopped from setting up title to the land, through other persons.

Now, it is true, that McGee's tenancy at will, being by construction, a tenancy from year to year, according to the decisions, could determine only at the end of the year. *Leighton vs. Leed,* 1 *Ld. Raym.* 707. *Doe vs. Snowden,* 2 *Wm. Blackstone's R.* 1224. *Doe vs. Porter,* 3 *T. R.* 13. *Porter vs. Constable,* 3 *Wils.* 25. *Wright vs. Darley,* 1 *T. R.* 159. 4 *Kent's Com.* 112. See, also, the very learned discussion of the doctrine relative to estates at will, in the opinion of Judge *Putnam,* in the case of *Ellis vs. Paige,* (2 *Pick. R. p.* 71, *note.*) At the death of the tenant, therefore, within the year, the interest in the tenancy continues to the end of the year; and it may be said that this interest, at the death of McGee, continuing for the balance of the year in which he died, passed to his wife; and that she became thereby tenant to her husband's lessor, Dawsey; and further, that Moira, intermarrying with her, by the marital right, acquired the unexpired term, and thereby became tenant to Dawsey; and he selling the unexpired term to Bandy, he, Bandy, under whom the defendant acquired possession, became tenant

to Dawsey. To which I answer, that at the death of McGee, the interest in the lease for the balance of the year in which he died, did not, by law, devolve upon his widow, but passed to his legal representatives. *Shore vs. Porter*, 3 *T. R.* 13. She could only acquire it by will, or by due course of administration, and there is no evidence of a will, or of an administration. It is proven simply, that she held possession after his death, until she married Moira, eight months after his death. There was, therefore, no legal succession of the lease to her. She came into possession without lawful right. She acquired no property in McGee's lease, and Moira could acquire none, by his marriage with her.

He very clearly went into possession as a *tort feasor*, and did not own the *unexpired lease*, which the witness says he sold to Bandy. Neither Moira, therefore, nor Bandy, occupied the relation of tenant to Dawsey. Between them and McGee, the lessee of Dawsey, there was no privity. Besides, the evidence is altogether too indefinite to warrant the conclusion, that when Moira married McGee's widow, any portion of an unexpired year from McGee's death remained; or that when he sold to Bandy any portion of it remained. When McGee died, is not proven; and it is proven that his widow was in possession eight months after his death, before she married Moira. He may have died at the beginning, middle, or close of the year; and if either of the two last suppositions be true, the conclusion as above is impossible. The most reasonable presumption is, that her eight months of possession exhausted the year, and that there was no unexpired portion of it remaining, when Moira married her. When he sold to Bandy, is not proven. It does not appear how long, after he married Mrs. McGee, he held possession before he sold to Bandy. To make the position tenable, that Bandy came into possession derivatively from McGee, through Moira, it ought to appear affirmatively that McGee's lease was unexpired when he bought from Moira. I rest, however, with entire confidence, upon the legal position, that at the death of McGee, no interest whatever, in an unex-

Cody *vs.* Quarterman.

pired term of one year vested in his wife, and that Moira acquired none by marriage.

It was argued, in behalf of the plaintiff in error, that from the evidence, the tenancy of McGee was determined by the entry of Dawsey, before Bandy bought of Moira, and that he (Dawsey) sold the property to Bandy, and therefore, neither Bandy nor those claiming under him, could be the tenants of Dawsey. This conclusion, so far as the facts are necessary to it, is drawn inferentially from the evidence. It is proven that Dawsey was in possession in 1836; that about that time, Bandy had left the State for Florida, where he remained some time; that before 1836, he had claimed the land; that after his return, he brought suit against Dawsey for it; which remaining on the calendar for several terms, was discontinued, and shortly thereafter, Bandy was in possession, and sold to McIntyre, whose executor put the defendant into possession. From these facts, counsel infer, that in 1836, Dawsey determined the tenancy of McGee by entering; and thus it was impossible for any one claiming under McGee, to be his tenant. They infer, too, from the possession of Dawsey, in 1836, the pendency of the suit in favor of Bandy against him for the land, its discontinuance and the subsequent possession of Bandy, that the controversy between Dawsey and Bandy, about the land, was settled by a sale from Dawsey to Bandy of the fee; and upon these inferences, they conclude that, as between Bandy and Dawsey, there could be no relation of landlord and tenant, and of course, none between the defendant and Dawsey. The facts were, as to these things, properly submitted to the Jury for their finding. I can only say, that if found according to the inferences of the counsel, then the law arising upon them would be, as the counsel claim it to be, that is: that Dawsey's entry would terminate any previous tenancies; and a sale of a fee to Bandy, would enable the defendant, claiming under him, to set up title under him, against Dawsey. The facts are not so clearly, by any means, proven, as to enable us to say, applying the rules of law to them, that on these last grounds the verdict was contrary to law.

It was argued for the defendant in error, that Moira was re-

cognized by Dawsey, as his tenant, and therefore, the relation of landlord and tenant existed between them. The only evidence of this, is the statement of the witness, that Moira sold the unexpired lease to Bandy. If to this recognition of McGee's lease, and his (Moira's) holding under him, by Moira, were added Dawsey's recognition of him as tenant, then, clearly, the relation would have existed. The evidence shows no such recognition by Dawsey. And it is not possible for one man to make himself the tenant of another, by entering on his premises, and selling to a third person what he calls an unexpired lease. The assent of the owner to the tenancy, must appear before it can be assumed that the relation of landlord and tenant exists between him and the tenant.

We think that, according to the facts expressly proven, the relation of landlord and tenant did not exist between the plaintiff below and the defendant; and that on that account, the verdict was contrary to law, and a new trial ought to have been granted.