# CHARLESTON.

## ARBENZ *v.* EXLEY, WATKINS & Co.

Submitted June 9, 1902. Decided March 21, 1903.

1. TENANT—*Rent.*

A tenant of land, not merely of a room or appartment, must pay rent for his term though a building on it included in the lease without fault on his part, is totally destroyed by fire, unless the lease otherwise provide. (p. 477).

2. TENANT—*Annual Lease.*

One who enters into possession under a written lease without seal for a term greater than five years is a tenant at will; but if he pays periodical rent, the tenancy is by law one from year to year, and he must pay rent accordinly. The lease does not vest an estate for the term, but it is admissible evidence to prescribe the rent and the rights of the parties and all things save duration of the tenancy. The tenant can only end the tenancy by notice to quit, and must pay rent as a tenant from year to year, and cannot discharge himself from rent by abandoning the premises. (p. 478).

3. TENANT—*Liability—Loss of Property.*

Unless a lease provide for repairs by a landlord, he is not bound to either repair or rebuild in case of accidental destruction. He is bound only so far as his covenant goes. His covenant to repair is independent and does not release from rent, and is to be enforced by recouping damages in an action for rent, or by a separate action for damages. (p. 483).

Writ of error and *supersedeas* to the Circuit Court, Ohio County.

Action by John Arbenz, Sr., against Exley, Watkins & Company. Judgment for plaintiff, and defendant appeals.

*Affirmed.*

HUBBARD & HUBBARD, and JOHN ARBENZ, JR., for plaintiff.

HENRY M. RUSSELL, for defendant.

BRANNON, JUDGE:

John Arbenz, Sr., made a written lease, but not under seal, to Exley, Watkins & Company, leasing for a term of five years and three months a brick building, including vacant parts of certain lots, in the city of Wheeling, the term commencing 1st January, 1896, and ending 31st March, 1902, for the annual rent of seven hundred dollars, commencing 1st April, 1896, payable in monthly installments. The lessees took possession the first week of January, and occupied the premises, paying rent monthly. On the 15th September, 1898, a fire totally destroyed said building. The lessees paid rent for that September and also for October, but with the rent for October sent a letter, 31st October, 1898, to Arbenz informing him that they thereby vacated the premises and surrendered them to him. In November, 1898, Arbenz sued out a distress warrant against said lessees for rent from November, 1 1898, to 31st October, 1899, and the same having been levied, a forthcoming bond was given, and in the proceeding upon it in the circuit court of Ohio County a verdict was rendered for the plaintiff for five hundred and two dollars and fifty-four cents after deducting for failure to repair an engine, and judgment given thereon, and the defendants took a writ of error. The defendants filed pleas denying grounds of attachment and denying all liability for the rent claimed.

Counsel for defendants contends that the destruction of the building by fire discharged the tenants from further obligation to pay rent. He does not base this position on common law, as it requires the tenant to pay rent notwithstanding it is wholly destroyed by accidental fire, flood or the like, unless there be stipulation otherwise. 18 Am. & Eng. Ency. L. (2d ed.) 306; 2 Rob. Prac. 52; *Scott* v. *Scott*, 18 Grat. p. 165; 2 Minor 762.

Where the lease carries no interest in the land, but is a room or apartment merely, total destruction of the thing leased discharges the tenant from future rent. 18 Am. & Eng. Ency. 308; 2 Tayl. Landlord & Ten., sec. 520. Counsel rests the position that the fire absolved the tenants from rent upon Code, chapter 72, section 22, that "No covenant or promise by a lessee that he will leave the premises in good repair shall have the affect, if the buildings are destroyed by fire or otherwise, without fault or negligence on his part, of binding him to erect such buildings again, or to pay for the same or any part thereof unless there be other words showing it to be the intent of the parties that he should be so bound." This statute was made to change the common law rule that bound the tenant in case of destruction by fire to rebuild, if the lease bound him to leave the premises in good repair. *Ross* v. *Overton,* 3 Call 309; *Maggort* v. *Hansburger,* 8 Leigh 532; *Thompson* v. *Pendell,* 12 *Id.* 591. It does not change the common law as to rent. The revisors of the Code of 1849 proposed that section so as to release the tenant from rent proportionally when destruction deprived him of the use of the tenement; but the Legislature struck out the clause as to rent. 2 Rob. Pr. 54. Counsel says that the words "or to pay for the same or any part thereof" in the section can refer to nothing but rent. They plainly in terms refer to "buildings," not rent. It does not deal with rent.

The lease in the present case is for a term beyond five years, and being not a deed, it falls under section 1, chapter 71, Code, providing that "No estate of inheritance or freehold, or for a term of more than five years, in lands, shall be conveyed, unless by deed or will." It is argued that the lease is void by the statute, and the basis of no demand for rent. The court gave an instruction, which controls the case, to the effect, for present purpose, that the jury should find for the plaintiff $700 rent for the one year claim. If that instruction is right, others in the case are immaterial, as is conceded on both sides, because that being right, others, if erroneous, would not affect the result. The defendants took possession by reason of the lease and paid rent. They were then tenants. The lease did not pass to them the term which it purported to pass, it is true; it passed no distinct term. The statute makes the lease in-

effectual to pass the term of over five years, or any term; but, it does not say it is void, or void for all purposes. It simply does not pass an estate. But when under its color the lessees became tenants, a tenancy was established. What kind of tenancy? The decided weight of authority is that when a lease is made not complying with the statute of frauds, and possession is taken, there arises, by operation of law, a tenancy from year to year. "This implied tenancy, from year to year, will arise in case where occupation is had under parol demise for years void because exceeding the period allowed by the statute of frauds." Taylor, Landl. & Ten., sec. 56. "An entry under a lease for a term at the annual rent, void for any cause, and a payment of rent under it, creates a tenancy 'from year to year upon the terms of the lease except as to its duration." Wood, Stat. Frauds, sec. 22, p 56. The lease is admissible evidence, not to pass a term, not to give title for the term it names, but to show some kind of a tenancy exists and to show its term and conditions. So says Wood *ubi supra.* See 1 Washb. Real Prop., sec. 823. *Huntington* v. *Parkhurst,* 24 Am. St. R. 146; 87 Mich. 38; *Schulyer* v. *Liggett,* 2 Cow. 660; *Coudert* v. *Cohn,* 118 N. Y. 309. In *Reeder* v. *Sayre,* 70 N. Y. 80, the court says such a void lease may be repudiated as soon as made by either party, because it does not of its own force bind them, but possession and payment of rent make it a tenancy from year to year and that then, though the lease is void as to term and interest in the land, yet it regulates the relation of the parties in other respects, and may be resorted to to determine their rights in all things consistent with and not inapplicable to a tenancy from year to year. But our own court in *Allen* v. *Bartlett,* 20 W. Va., said "although a parol lease for more than one year is invalid under the statute of frauds, yet if a person enters into possession under a parol lease for four years, and holds over into a second year, he becomes a tenant from year to year upon the terms of the parol lease and so continues as long as he remains in possession without any new or other agreement."

In *Miller* v. *Wisner,* 45 W. Va. 59, we said that though a contract for service more than one year was void, yet after service there could be action for compensation, and the contract could be used to furnish measures of recovery. Just so in

this case, it fixes the rent. Many cases hold this view. *Nash* v. *Berkmeir,* 83 Ind. 539; *Larkin* v. *Avery,* 23 Conn. 315; *Garet* v. *Clark,* 5 Ore. 464, and others. Counsel for defendants relies upon *Unglish* v. *Marvin,* 128 N. Y. 380, holding apparently different views. In reference to this case I may safely say, that if to be construed as holding counter to the position above stated, it is counter to numerous New York cases. Apparently it does hold hostile doctrine, but the judge delivering the opinion does not think so, because he says the relation of the landlord and tenant did not arise under the particular agreement in that case, and also because he expressly states the law to be that an occupancy under a void parol lease for more than a' year does create a tenancy from year to year, and cites as proving this, cases cited above. He distinctly says that these cases settled the above stated doctrine, and does not hint any dissatisfaction with them. He based the ruling on the peculiar contract in the case. All I need say of that case is that it admits the above law. We are referred to *Jordan* v. *Furnace Co.,* 126 N. C. 143. It was an action to recover. damages for refusal to execute a lease pursuant to an oral contract to lease premises for five years. That was an action direct upon the void contract, which alone could give existence to the contract. There being no contract, there was no right of action. The case is not in point. The case of *Johnson* v. *Albertson,* 51 Minn., 333, seems to hold against the doctrine stated; but it admits that the current of English and American authority does hold that entry and payment of rent under a void lease creates a tenancy from year to year. I just now met with a later case *Steele* v. *Anhouser Co.,* 57 Minn. 18, 58 N. W. 685, holding that a lease void under the statute of frauds "will nevertheless regulate the terms as to rent, if the tenant goes in to possession and occupies the premises." The *Johnson Case* seems to me no more than that the void lease cannot fix duration of the term. I think 1 McAdam, Landl. & Ten. 66, lays down sound law thus: "Where a lease is void by reason of the provisions of the statute, that does not render the contract an illegal or unlawful one, if the parties choose to perform it. If the lease is verbal, and the term is longer than one year, it is void in the limited sense that neither party can compel the other to perform it. The landlord need not, in such case, give

the tenant possession of the premises, if he choose not to do so; and no action will lie by the tenant against the landlord in consequence thereof. Nor need the tenant take possession in such case. No action will lie against him, if he does not. The parties may, however, go on and perform the agreement, though they could not be compelled to do so. And if the tenant goes into possession of the demised premises and occupies them, he will be bound to perform the agreement, by paying the rent agreed for such time as he may remain in possession in the same manner as though the lease had been reduced to writing. And if by reason of the manner of paying rent, as by the year, a yearly tenancy is implied by law, the tenant may make himself liable for the year's rent. During the time which the tenant occupies the premises, or in case a yearly tenancy is implied by law, the tenant will be bound to perform the terms of the agreement." "A tenant in possession under a parol lease for two years void by the statute of frauds is a tenant at will or from year to year." *Duke* v. *Harper,* 6 Yerg. 280, (27 Am. D. 462.)

Thus far I have written on the theory, conveyed by the words of authority, that a lease not conforming to the statute not only brings into being a tenancy, but one from year to year; but my mind has raised again the question, Is it a tenancy at will or one from year to year? If at will, the recovery in this case is wrong, because it is one for a year on the theory of a tenacy from year to year, which requires a notice to terminate the tenancy for three months terminating on the terminal day of the current year, which was not given in this case; whereas, if a tenancy at will, no notice is required, and the letter of defendants surrendering the premises would I think be sufficient. An examination upon this question has brought me to the conclusion that mere entry into possession under such a lease creates what technically is a tenancy at will, but payment of rent periodically makes the tenancy a periodical one, not one merely at will, and further, the authorities say that the law implies a tenancy from year to year, or quarter to quarter, or month to month, as the case is. In England and many of our States are statutes to the effect that one entering under a lease void under the statute of frauds is a tenant at will, and even under those statutes it is held that occupancy and payment of

rent do away with the feature of tenancy at will and make it a periodical tenancy. 18 Am. & Eng. Enc. L. 194. "The mere fact that a person goes into possession under a lease void because for a longer term than a year, does not create a yearly tenancy. If he remains in possession with the consent of the landlord for more than one year under circumstances permitting the inference of his tenancy from year to year, the latter could treat him as such, and the tenant could not relieve himself from liability for rent up to the end of the current year. And the terms of the lease void as to duration of term, would control in respect to the rent." *Talamo* v. *Spitzmiller,* 120 N. Y. 37, (17 Am. St. Rep. 609). Quoted and approved in *Hellan* v. *Patton,* 44 So. 454. Such a tenancy under a void lease is at first a tenancy at will, but by remaining in possession for several years paying rent the tenancy becomes one from year to year, "the tenant cannot at any time during the year, at pleasure, surrender the premises against the will of the landlord, and excuse himself from accruing rent"; nor can he defend an action for the rent by showing that he abandoned the premises as he is liable whether he in fact occupies the premises or not; and the parol agreement which is acted on by the parties "until the estate becomes a tenancy from year to year will govern their rights as to the amount of rent and the time of payment." *Barlow* v. *Wainswright,* 22 Vt. 88, (52 Am. D. 79). In Vermont the statute declared that one holding under a void lease should be a tenant at will; but the continuance of possession and payment of rent "expands into a holding from year to year," said the court. Here the tenants held far into the third year, paying rent every month, and many cases make them tenant from year to year. Such a tenancy, though at first one at will, "for the purposes of notice to quit, and some other purposes has been by judicial constructions converted into a tenancy from year to year." *Cody* v. *Quarterman,* 12 Ga. 386; Note, 17 Am. St. R. 752; *Kerr* v. *Clark,* 19 Mo. 132; *Larkin* v. *Avery,* 23 Conn. 316.

It is suggested that this is a tenancy from month to month, and then the letter from the tenants surrendering would close the lease at once or a month thereafter; but the lease covenants for rent of "$700 per annum for each and every year commencing from and after the 1st day of April, 1896, payable in equal

monthly installments.". This is a yearly rent, payable month-
ly, and does not make it a monthly tenancy, in face of another
clause making the term begin 1st January. *Sully* v. *Murray*,
34 Mo. 420; *Irving* v. *Thomas*, 18 Me. 418; ·18 Am. & Eng.
Enc. L., (2d ed.), 196.

It is hardly necessary to extend this opinion beyond this
point in view of instruction 5; but it may be expected that this
opinion should refer to that provision in the lease. that the
lessor "agrees to put and keep the roof of said building in good
order." I do not understand that failure of Arbenz to repair
the roof before the fire ·gave cause of abandonment and released
lessees from rent, because failure to repair does not warrant
abandonment, unless the property is therefrom untenantable,
which is not claimed, and remaining in possession after breach
is a waiver of right to abandon. The lessees kept on in pos-
session and paying rent. 18 Am. & Eng. Enc. L. 231; Gear
Landl. & Ten. sec. 107. This theory would show instruction
5 to be wrong. But why speak of this when there was no aban-
donment, or claim or show of it before the fire for want of re-
pair of the roof? I do not see that the question of abandon-
ment is material. But the ·claim under this clause was that
after the fire it released from rent, as the defendants ·asked,
but were refused, instruction 9, "that the failure of the plain-
tiff to restore the roof of the building after the fire freed the
defendants from any further obligation to continue to occupy
the building or pay rent for the same." This is a .claim that
Arbenz was bound to rebuild, as there can be .no roof without
·a house. The law does not require a lessor to rebuild a house
destroyed by fire without a covenant to do so in terms on a
general covenant to repair. 18 ·Am. & Eng. Enc. L. 226, (2d
ed.) ; *Kline* v. *McLain*, 33 W. Va. 32; *Windon v. Stewart*, 43
*Id.* 711. This lease contained no general covenant to repair
or rebuild, but only the limited one to keep the roof in order.
As ·neither the written lease nor the law required Arbenz to
rebuild, of course, this clause as to repair of the roof had no ·
application after the fire. The case of *Thompson* v. *Pendell*,
12 Leigh 608, is cited to support the argument that the coven-
ant as to the roof is as strong to relieve the tenant from
rent as the covenant in that case. There a mill was leased and
destroyed by fire during the term, and the lease said that the

lessee should make repairs "except heavy repairs such as if the dam or forebay should be injured by high water, or the main shaft or wheel should give away so as to require a new one," in which case the lessor was to repair the same, and the lessor "is not to lose the rent if he should go on to do the work here according to contract." It was held that this did not bind the lessor to rebuild, but as he refused to do so, the tenant was discharged from rent, because it was to be inferred that as the lease released the tenant from the rent for refusal of the landlord to make heavy repairs, for a stronger reason it ought to release him for a total failure to rebuild. The reason of decision there was that the lease itself was held to mean and provide for a release of rent for failure to rebuild; but in our case there is no hint of release of rent for any cause. But this roof covenant is an independent one. The lease does not express or imply that repair is a condition precedent to obligation to pay rent; that repair must be made before payment of rent. The covenant could not apply after the fire. For its breach, if there had been any shown, the defendants could sue for damages in a separate action, or recoup from the rent. "The landlord's covenant to repair and the tenant's to pay rent are independent covenants, and at common law a breach of the former is no defence to an action on the latter. And this still remains the law, both in England and the United States." 1 Taylor Landl. & Ten. sec. 332; 18 Am. & Eng. Enc. L. 230. But there can be no question that the tenant may, in a suit for rent, recoup damages for failure of a lessor's covenant to repair. *Chewront* v. *Bee,* 44 W. Va. 103; 18 Am. & Eng. Enc. L. 230. There was no notice of recoupment for this cause, and one would not have availed. There was no error in refusing defendant's instruction. There was no evidence to prove a breach of the covenant, and really this discussion of it is useless except as it raises a question of law. It follows that there was no error in plaintiff's instruction 3 that failure to repair roof was no release of the obligation to pay rent. It adds to the strength of the plaintiff's case that the defendants continued on the premises from the 15th September to 31st October.

Judgment affirmed.

*Affirmed.*