# CHARLESTON.

IRVIN DAVIS v. TIDEWATER COAL & COKE COMPANY.

Submitted April 21, 1920.    Decided May 4, 1920.

1. FRAUDS, STATUTE OF—*Contract not Void if it May be Fully Performed Within Year.*

   Our statute of frauds does not render a contract void and unenforcible if in any possible event it may be fully performed according to its terms within one year. (p. 353).

2. SAME—*Does not Apply to Executed Contract; May Furnish Measure of Damage for Part Performed.*

   The statute of frauds has no application to an executed contract, and when wholly or partially executed may furnish to the jury the proper measure of damages for the part performed. (p. 353).

3.  PAYMENT—*Receipts Are Only . Prima Facie Evidence of the Facts Recited.*

Receipts given are only prima facie evidence of the facts recited, and may be overthrown by evidence showing that the facts are not as recited, when, as in this case, they relate to loss of profits for breach of a contract which had not occurred at the time such receipts were executed. (p. 355).

(LYNCH, JUDGE, absent).

Error to Circuit Court, McDowell County.

Assumpsit by Irvin Davis against the Tidewater Coal & Coke Company. Verdict and judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Anderson, Strother, Hughes & Curd,* for plaintiff in error.
*George W. Howard,* for defendant in error.

MILLER, JUDGE:

Plaintiff sued in assumpsit to recover the price or value of his labor for coal actually mined from defendant's mines number one and number two, pursuant to an alleged contract or contracts with defendant, and for damages for alleged breaches thereof by defendant, the specification of such breaches applicable to the contract as to mine number one relating to the obligations of defendant thereunder to furnish mine props, cross ties, rails, spikes, machines, and mine cars; and as to number two, its failure to furnish railroad cars, mine cars, pumps, fans, cutting machines, and to do the engineering work necessary to enable plaintiff properly to execute the contract on his part to mine the coal from said mines; and as to both mines the breaches of defendant to pay him the balance due for coal actually mined and delivered under and pursuant to said contracts, and for damages for loss of profits in not being permitted by defendant completely to perform said contracts on his part. The declaration avers that the balance due plaintiff for four hundred cars of coal actually mined from mine number one was $892.25, and for damages for loss of profits on four thousand cars of coal remaining in the mine, which under his contract he was entitled to take out, the sum of $4,000.00; and the damages sustained

by the other breaches of defendant's contract to furnish props etc., as specified, aggregated several thousand dollars.

As to mine number two, in addition to the special damages sutained by the alleged breaches of defendant to provide mine cars, pumps, etc., aggregating several thousand dollars, it is averred that the defendant owed plaintiff on coal actually mined a balance of thirteen cents per ton for the coal mined in addition to $1.32 per ton paid him thereon, and which additional sum, it is alleged, defendant had contracted to pay him for fifteen thousand tons mined and delivered, provided defendant should be thereafter allowed by the United States Fuel Administration to charge for the coal the additional price of forty-five cents per ton over the prices prevailing at the time of said contract, or if the cost of mining said coal to plaintiff should thereafter be increased, both of which events the declaration avers had happened, rendering the defendant liable to plaintiff on said contract in the additional sum of $1,950.00.

Defendant demurred to the declaration, which demurrer was properly overruled; and in addition to the general issue tendered, it filed a plea of tender of $2,745.22; the plea of the statute of frauds, averring that neither of the contracts pleaded was in writing, nor was there any memorandum or note thereof signed by defendant or its agent, and that it was not to be performed within a year or capable of performance within that time; a plea that subsequently to the time of the making of the alleged contracts, on January —, 1919, plaintiff and defendant mutually agreed that said contracts should end not later than April 1, 1919, and that in consideration that plaintiff should be permitted to mine coal up to that date, all claims against defendant under said prior contracts should be settled and fully discharged. Issue being joined on all of said pleas, the case was subsequently tried to the jury and resulted in a verdict for the plaintiff in the sum of $4,500.00, which on October 4, 1919, was carried into the judgment now complained of.

The first four of the seven distinct propositions relied on to reverse the judgment relate solely to the defendant's pleas of the statute of frauds. It was admitted on the trial by counsel for plaintiff and in his brief and oral argument here that the con-

tract relating to defendant's mine number two was to run for
two years, and was not and could not have been performed
within one year, and that nothing was claimed or proven for
damages for loss of profits on coal not mined when defendant
broke the contract and refused further performance thereof by
plaintiff, but only for the balance due on the quantum meruit
for the coal actually mined and delivered by plaintiff under the
contract, namely, the thirteen cents per ton additional, subse-
quently agreed upon and proven before the jury on the trial. It
is suggested in argument that as the sum found by the jury over
and above the amount acknowledged and tendered by the de-
fendant was so nearly the sum of $1,950.00 claimed by plaintiff
as the balance due him for the fifteen thousand tons of coal
mined from mine number two, the jury must have based their
verdict on that item of plaintiff's account, and that we should
properly eliminate any supposed errors in the rulings of the ·
court or in the verdict based on the items relating to the other
contract. We think there is no virtue in this suggestion. The
verdict can not be clearly referred to that item in the account.
We may assume that the jury found nothing for damages for
loss of profits on coal not mined from number two mine, for
plaintiff's counsel disclaimed and did not undertake to prove any
damages for loss of profits as to that mine.

So we are bound to consider the plea of the statute of frauds
in its application to the contract relating to number one mine.
Proof was offered showing or tending to show damages sustained
by plaintiff not only by defendant's failure to furnish mine
timbers, machines, cross ties, etc., but for loss of profits on the
· coal left in the mine and covered by plaintiff's contract.

The statute as construed here does not render a verbal con-
tract void and unenforcible if in any possible event it may be
fully performed according to its terms within a year. *McClana-
han* v. *Otto-Marmet Coal & Mining Company,* 74 W. Va. 543.
The contract respecting mine number one as found by the jury
on the evidence contained no time limit for executing it, but it is
earnestly insisted that by the great preponderance of the evi-
dence, considering the quantity of coal which remained in the
mine, it was shown that the contract was wholly incapable of

performance by plaintiff within a year. According to plaintiff's evidence and the evidence of some of the other witnesses, there remained in the mine of the coal covered by his contract, February 1, 1919, from twelve to fourteen thousand tons of coal, and that considering the number of working places and the average number of miners employed by plaintiff, he could easily have mined out all of this coal within a year. On the other hand, witnesses for the defendant controverted this fact. But the conflict mainly grew out of the disagreement as to what territory or coal area was covered by plaintiff's contract. Plaintiff and some of his witnesses contended for one boundary, the defendant and its witnesses for another. Hylton, a witness for defendant and one of its engineers, present at the time the contract was made, November 14, 1917, with reference to the coal area covered thereby, says, "It is hard for one to state just the territory he was to mine," and "It is hard for one to say just how much coal a man will mine out." And referring to a map or blue print present and to the rooms in the mine in the vinicity where plaintiff was to work, he says the rooms he was to mine out were not designated on the map. Williams, one of the mining engineers, a witness for plaintiff, being shown one of the blue prints or maps and the territory which plaintiff had pointed out to him as being covered by his contract, estimated that the coal remaining to be mined was 13,888 tons, which could easily have been mined out within a year. Plaintiff, referring to a blue print map, swore that the coal area he pointed out to Williams, and on which map he undertook to draw a line designating the territory covered by his contract, was correctly pointed out to Williams, and was made the basis of Williams' calculation of the coal remaining unmined when defendant refused further performance of the contract by plaintiff. After considering the whole evidence we can not say that it so far preponderates in favor of defendant as to call for reversal of the judgment. Of course if we accept the defendant's theory as to the coal area covered by the contract, the evidence does preponderate in favor of defendant on the question of possible performance within a year. But the area covered, and the possibility of mining out the coal within a year, were controverted

facts and presented questions for the jury and not of law for
the court. They were properly referred to the jury by plaintiff's
instructions. After propounding the law on the statute of
frauds, these instructions submitted to the jury, first, the
question whether the contract actually made with reference to
mine number one could have been performed within a year; and,
second, if they affirmed the first proposition, they were told that
if they found the defendant wrongfully discharged plaintiff and
refused further performance with him, he was entitled to the
difference between the cost of performance and the contract
price for mining the coal stipulated in the contract. Thus sub-
mitted, the instructions did not, as complained by defendant,
submit to the jury a question of law.

Of course the statute of frauds has no application to executed
contracts, and as to the part executed the price stipulated for
performance would furnish to the jury the true measure of
damages for the part so performed. *Miller* v. *Wisener,* 45 W.
Va. 59; *Arbenz* v. *Exley,* 52 W. Va. 476, 479.

The next point of error urged is that the trial court refused
defendant's instruction number five. This instruction related to
the effect of the several receipts given defendant by plaintiff on
the various pay days, which being in full, the jury would have
been instructed bound the plaintiff unless afterwards some mis-
take or error was discovered therein. According to our decisions
a receipt is but prima facie evidence of the facts recited. Oral
evidence is admissible to overthrow them. *Anderson* v. *Davis
and Ould,* 55 W. Va. 429; *Chicago Art Company.* v. *Thacker,*
65 W. Va. 143. Such receipts could not possibly have been made
to cover damages for loss of profits resulting from the subse-
quent breaches of a contract by the defendant. These profits
alone, if the jury believed the plaintiff's evidence, would account
for the amount of the verdict in excess of the sum tendered by
defendant. So we see no error in the ruling of the court on
instruction number five; and it follows of course from this con-
clusion that the court committed no error in rejecting defend-
ant's instruction number six, which would have limited the jury
in their verdict to the sum of $2,745.22, tendered by defendant.

As we hold the evidence on each of the several theories of
plaintiff justified the verdict, there was no error in the judg-

ment denying defendant a new trial. The judgment must therefore be affirmed.

*Affirmed.*