## LARKIN vs. AVERY AND OTHERS.

Where the relation of landlord and tenant exists, possession of the leased premises cannot be obtained, by force, against the will of the tenant, but the landlord must resort to his legal remedy, for that purpose.

A tenant, having been removed, against his will, from certain leased premises, under a warrant, founded on the statute, relating to persons, suspected to have been exposed to the small-pox, the landlord, during his temporary absence, took possession of said premises, and after his return, which was as soon as practicable, kept him out by coercion. Held, that the tenant had not relinquished possession of said premises, and that the landlord had acquired no right forcibly to remove him therefrom.

Although, by the express provisions of the English statute, 29 Car. II., a parol lease, for a period not exceeding three years, is valid, yet a parol executory lease, though for a shorter time than three years, is entirely void.

Under our statute, a parol lease, whether for one year, or for a longer, or shorter period than one year, is void. Where, however, the lessee takes possession under a parol lease, he becomes a tenant at will; but, by implication, his estate is converted into a tenancy from year to year. But this rule is not to be so applied, as entirely to exclude from consideration, everything that was said by the landlord and tenant, at the time of the letting, as to the proper rent, or proper time for leaving the premises.

The English rule, under which a tenant from year to year is entitled to six months' notice to quit, before the landlord can bring ejectment against him, has been superseded by our statute, which gives to the lessor, after thirty days' notice, a summary process, where the lessee holds over his term.

Larkin *v.* Avery and others.

Where, on the trial of a cause, the plaintiff objected to a deposition, which . was offered, by the defendant, in evidence, and which, the magistrate certified, was taken because the deponent was going to sea, and it was agreed that the deponent did not go on the voyage contemplated, at the time the deposition was taken; and the parties were in controversy, as to the fact whether the deponent had since gone to sea, or was within the state, and the court refused to postpone the trial to enable the defendant to obtain further evidence on that point, and rejected such deposition ; it was held, that a new trial ought not, on that account, to be granted.

THIS was an action of trespass for breaking, and entering certain apartments, used and occupied by the plaintiff as his dwelling-house, and forcibly ejecting, and removing him, and his family, and effects, therefrom.

The cause was tried before the superior court for New London county, at the term holden in March, 1854. On the trial it was admitted that about the middle of September, 1851, the plaintiff with his family entered into possession of the south half of the basement story of a dwelling-house belonging to the defendant, in the village of Mystic, in the town of Groton, and that the plaintiff and the defendant Avery had previously made a contract regarding said premises, under which the plaintiff had so entered.

The plaintiff claimed that he hired the portion occupied by him, until the first of April, 1852, the rent being payable at the end of each month. The defendant claimed that the hiring was such that either party could terminate it at pleasure, the rent being payable, each month, in advance. The plaintiff continued in the undisturbed possession of said premises, until some time in the month of February, 1852. The defendant Avery, between the 15th and 20th of that month, ordered the plaintiff to quit the house, which the plaintiff refused to do. On the 23rd of February, 1852, the plaintiff, with his family and effects, was removed from said premises, under a precept, or warrant from the town authorities, to another dwelling in a secluded portion of said town, on account of an apprehension that the plaintiff might spread the infection of the small-pox. The plaintiff did not

consent to leave said dwelling, but was forcibly removed under said order, taking with him the key of his room, opening into the passage, dividing the north from the south part of the said basement story; said passage way being entered by an outer door, used in common by the occupants of said basement story.

The plaintiff remained, with his family, in the house, to which he was then taken, for the reasons aforesaid, until the 7th of March, 1852, when they, with some of their goods and effects, were brought back to the tenement first described, by the same officer who had removed them, it being supposed that all danger of spreading the small-pox was past.   On attempting to unlock the door from the passage aforesaid into the portion of said house which the plaintiff claimed, it was ascertained that said door was otherwise fastened than by the lock, and the plaintiff thereupon went to a window, through which he had previously been in the habit of entering said tenement, whenever his wife was absent and had locked the door, and raised said window; and then the plaintiff removed, with an axe, the fastening of said door, which was a strip of board, nailed across the same.   His wife and child then came in, and a portion of the furniture was also deposited in said room.

Said Avery then appeared, and ordered the plaintiff to quit said house with his family, and also ordered the officer, who was aiding in bringing in the residue of their furniture, to desist from so doing, and to quit said premises.

The plaintiff refused to go, and thereupon Avery, having procured the aid of the other defendants, forcibly removed the plaintiff, his family and effects, into the street.   The defendant Avery claimed, and it was admitted, that after the plaintiff was removed as aforesaid, on the 23d of February, he took possession of said tenement, fastened the door thereof, and was in the occupation of the same, when the plaintiff so returned.   The defendant asked the court to charge the jury, as matter of law, that said agreement, as to the

letting of said tenement, having been by parol, was revocable; and having been revoked by said Avery, if the plaintiff was carried out of the occupation of the premises by said officer, under said authority, and then said Avery peaceably resumed such occupation and the plaintiff subsequently broke into the same with force, it was lawful for said. Avery to defend his possession, by putting the plaintiff out, at the time of such breaking, without unnecessary violence.

The court charged the jury, that such a letting as was claimed by the plaintiff, would give him a right to occupy, and enjoy the premises until the first of April next, after taking possession of the same, for such a letting was not a mere license, but a lease, which the defendant Avery could not revoke after the plaintiff had taken possession of the premises; that if the letting was of such a character that either party could terminate it at pleasure, then if said Avery had at any time ordered the plaintiff to quit possession, he could not lawfully remain longer, and said Avery might lawfully remove him, if he could do so, without a breach of the peace. That if the plaintiff had been removed from said premises, by the officer, forcibly and against his will, and with the intent to return, and said Avery took advantage of such removal to repossess himself of the premises, the plaintiff might reënter the same in the manner he did, and if he did so enter, and was in the peaceable possession of the same, then the defendant would have no right to eject him.

The plaintiff, in connection with the evidence as to the return of the plaintiff to the aforesaid premises, on the 7th of March, 1852, read in evidence, an order from the health committee of the town of Groton, to one Orrin Chapman, to repair to the above described premises, and remove the plaintiff therefrom, for the purpose of aiding in identifying the time of the transaction. The defendants objected to the admission of said paper, but did not ask the court to pass on the question of its admissibility. No claim was made

that said paper affected, in any manner, the rights of either party, and the court took no notice of the paper in the charge to the jury.

The defendants offered in evidence the deposition of Manuel Garcie, taken on the 11th day of March, 1854, because the deponent was about to go to sea, as was certified by the magistrate. The deponent did not go on the voyage on which it was claimed that he expected to go, but remained at home after the ship sailed. The defendants claimed that he had since gone to sea, and the plaintiff claimed that he was still at home, and within twenty miles of the court. The defendants then proposed to learn, by telegraph, what the fact was, but the court decided that the deposition was inadmissible, inasmuch as it was taken, only in reference to the expected absence of the witness, on the first voyage, and such was the certificate of the magistrate.

The court, on objection, ruled out the deposition and it was not read to the jury.

The jury rendered a verdict for the plaintiff, and the defendants moved for a new trial.

*Pomeroy* and *McCurdy*, in support of the motion, contended,

1. That the charge of the court was erroneous. A parol lease comes within the statute of frauds. 1 Sw. Dig., 255. 3 Day, 468.

The statute requiring a lease, for more than a year, to be executed as a deed, does not repeal the statute requiring a lease for a shorter time to be in writing. There is no inconsistency between them. *Benedict* v. *Benedict*, 5 Day, 464. 1 Sw. Dig., 253.

The English statute expressly excepts leases for three years. If there is an inference from this statute that a parol lease is good for three months, there is a similar inference, that, as against the lessors, it is good for three years.

The statute, respecting summary process, has no bearing

on the subject. If there is an inference from this statute that a parol lease is good for three months, there is the same inference that it is good for three years.

Part execution of a parol lease does not take it out of the statute at law. *Eaton* v. *Whitaker*, 18 Conn. R., 222. 1 Met., 483.

2. That the deposition was admissible. A deposition is taken because a man expects to go to London, but he goes to Liverpool; is it therefore inadmissible? *Gold* v. *Eddy*, 1 Mass., 1. 7 Shepley, 257. *Avery* v. *Woodruff*, 1 Root, 76. *Pettibone* v. *Deringer*, 4 Wash. C. C., 215.

*Foster*, contra, contended,

1. That the instruction of the court to the jury, that if the contract of letting and hiring the premises was such, as was claimed by the plaintiff, it was not a license merely, revocable by the defendants, but was irrevocable after the plaintiff had taken possession, was unquestionably correct.

2. That the defendant could not except to the charge of the court, that if the contract of letting and hiring was such that either party could terminate it at pleasure, yet if the defendant had ordered the plaintiff to quit possession, he could not lawfully remain longer, and the defendant could lawfully remove him, provided he did so without a breach of the peace.

3. That as to the further charge of the court, that if the plaintiff had been removed from the premises forcibly, and against his will, by the officer, and with the intent to return; and the defendant took advantage of the removal to repossess himself of the premises, the plaintiff might reënter the same, in the manner he did, and if he did so enter, and was in the peaceable possession of the same, then the defendants had no right to eject him; the same was undeniably good law.

4. That the decision of the court, as to the deposition, being a matter of discretion, was not subject to revision, by

motion for new trial; but if it were, the ruling of the court is unexceptionable.

ELLSWORTH, J.   One question, made in this case, is, whether the plaintiff, being removed from the defendant's house, under a warrant, as stated, can be held to have relinquished his possession; and whether the defendant was restored thereto, by his taking possession, so that he and not the plaintiff was in possession at the time of the trespass.

We have no doubt, that in contemplation of law, the plaintiff retained his possession as before, and the defendant acquired no right, by his entry while the plaintiff was kept out, by coercion.   His absence was temporary and brief, without design or consent, and with no purpose of giving up any rights he had acquired as a tenant, but of returning to the same, as soon as practicable and the law would permit.   This absence does not materially differ from an absence with one's family at church or on a journey.   We must therefore hold that when the plaintiff returned with his family and his goods and reëntered his house, he was in possession in the same manner as if he had not been removed; and that there was a forcible entry and detainer, by the defendant.

This being so, the question arises, are the defendants liable in trespass, either *quare clausam* or *vi et armis* for the assault, (for both are included in the declaration, though no more force was used, than was necessary to remove the plaintiff.) *Sampson* v. *Henry*, 13 Pick., 36.   *Holly* v. *Brown*, 14 Conn. R., 255.

The plaintiff's possession was, at first, with Avery's consent, as his tenant, whether it be held to be a tenancy at will, or a tenancy for some definite period, and it continued, in fact, as commenced, up to the time when he was put out of possession.   The question, then, is, could he be thus removed? could his possession, such as it was, be put an end to without some process of law?   We think it could not.   True, the defendant gave the plaintiff notice to leave

the house; but the question is, what is the effect of the notice? How may this possession, in fact, be put an end to? If the lease was void, because of the statute of frauds, being in parol, and was, as the defendant insists, at no time, more than a license to occupy; a license revocable at the pleasure of the landlord, still, as there was an admitted tenancy until the license was revoked, we do not admit that after the revocation, the tenant could be forcibly ejected. We have no occasion to decide, whether at the common law a landlord would have a right, so far as damages are concerned, to reënter and turn out the man who was his tenant; or that the landlord could not plead *liberum tenementum* to an action of trespass for the entry. This is, I suppose, the law of England, and of some of these adjoining states. *Sampson* v. *Henry*, 13 Pick., 36. *Meador and wife* v. *Stone*, 7 Met., 150. *Newton and wife* v. *Harland*, 39 E. C. L., 581. *Hyatt* v. *Wood*, 4 Johns., 50, 53.

The exigency of this case does not require us to go further than to hold that a possession, commenced under a tenancy, cannot be put an end to in fact, by forcibly removing the tenant, without process. In England, although a plea of title is a good plea to trespass for entering, such plea has been decided to be insufficient to an action for the assault, in removing the tenant. It was so held in *Newton and wife* v. *Harland*, 39 E. C. L., 581. It was there held, if the acts of the landlord in taking possession, constituted a forcible entry, and the tenant was forcibly removed, he could recover for the assault. The same was held in the case of *Sampson* v. *Henry*, 13 Pick., 36, where this exact distinction is dwelt upon, as most important.

We have no occasion to go beyond what is maintained in the cases cited, and yet, we think, our courts have, in fact, gone further. In *Bliss* v. *Bange*, 6 Conn. R., 78, where there had been a forcible entry by the landlord, and a subsequent restitution, under process of law, it was decided that the plea of *liberum tenementum* was not a good plea. The court

said if the plea was held sufficient, it would at once repeal the statute which gives treble damages for a forcible entry. They went on the ground, doubtless, that by our statute, if not by our common law, such an entry was illegal and criminal. The action, it is true, was brought on the statute and not at common law, and this perhaps may vary the question, though we are not confident that it does. We think, an assault, in such case, must be held unwarrantable and illegal. In England, such an entry is criminal and indictable, for by the statute of 5 Rich. II., it is enacted, " that none, from henceforth, may enter into any lands and tenements, but in case where entry is given by the law, and in such case, not with strong hand, nor with multitude of people, but only in a peaceable and easy manner." Erskine, J., in giving his opinion in 39 E. C. L., before cited, says, and the remark is in harmony with the other opinions : " It is true that the punishment of fine and imprisonment is expressly added, as the statutable consequence of a violation of this prohibition. Yet, inasmuch as the act is directly prohibited, the act itself is made unlawful, even if it were not ` already so at common law, and it seems therefore, to me, to follow, that a landlord under the circumstances of this case, though he has a right of entry, must in order to reinvest himself with the lawful possession of the premises, held over by his tenant, exercise his right of entry peaceably, and that he cannot found a legal right to remove the tenant, upon the illegal act of a forcible possession."

A question has been raised, as to the character of a parol letting, which does not exceed one year, or as in this case, is claimed by the plaintiff, from the middle of September, 1851, to April, 1852. The plaintiff claims that this lease is good and effectual until that time ; the defendant denies it, and insists that it is void, and of no effect, because it is in parol, and is a mere license revocable at any time, and that it had been revoked a reasonable time before the plaintiff was put out of possession, and, therefore, the defendant had a right to enter.

The court instructed the jury in favor of the plaintiff's claim, that the letting for a definite time, is not a mere license, but is a valid letting, which gives the plaintiff a right to remain until that lease expires, although it was in parol.

We think the instruction in this case, is correct, not because we hold that a parol lease, for any time, is good and effectual, as a lease; our statute is too clear and positive to admit of any such construction, since it makes every contract, of such a nature, incapable of being enforced, whether it be for more or less than a year. The statute lends not the least countenance to the idea sometimes expressed, that a parol lease for one year is good. This is more obvious, if possible, when we consider that the first section of our statute of frauds, which avoids all contracts for all interests in leases, if not in writing, was passed in 1771, and the statute respecting leases, (the fourteenth section of the act concerning lands,) which is supposed to sanction a parol lease, not exceeding a year, was not passed until 1788. This last section provides for recording leases, and declares that no lease, for more than one year, shall be good and effectual in law, against any other person, or persons, than the lessor, or lessors, and their heirs, unless such lease be in writing, subscribed by the lessor, attested by two witnesses, acknowledged before some authority, empowered to take the acknowledgment of deeds of land, and recorded at length, &c. The statute only adds to the requirements of the statute of 1771, instead of repealing or qualifying them, by implication. The English statute of frauds contains a section which differs from our own, in excepting from its operation parol leases, not exceeding three years; hence, in England, such a lease is as good now, as before the statute of frauds, when no leases needed to be in writing. But even there, if the lease is not actually commenced by the entry of the tenant, it is held to be only a contract for an interest in, or concerning lands, and is void by the fourth clause of the fourth section of their law. In Chit. Con., 319, 320, it is said: "Although the

second section of the act of 29 Charles II., renders valid a parol lease, for less than three years from the making, yet, until entry by the lessee, there is a mere *interesse termini*, and if he refuse to take possession upon such verbal letting, no action lies to recover damages for not occupying, or becoming tenant, nor can an action for use or occupation be maintained against the lessee;" the fourth clause applies to such a parol lease, not rendered effectual by entry; for it provides "that no action shall be brought whereby to charge the defendant upon any contract or sale of lands, or any interest in, or concerning them," like our statute, and hence it has ever been held here, as well as in England, that a mere executory parol lease is void and ineffectual, in behalf of either party, showing that our statute of 1788, which requires leases to be in writing and recorded, should not be construed to uphold any executory parol lease whatever. In Woodfall's Landlord and Tenant, p. 1223, it is said, that in leases for years, or other chattel interests, livery of seisin is not necessary, but instead thereof, an actual entry is requisite, to vest the estate in the lessee, for, to many purposes, he is not tenant for years until he enters; and Blackstone says, " Nor, indeed, does the bare lease vest any estate in the lessee, but only gives him a right of entry on the tenement, which right is called his interest in the term, or *interesse termini*, but when he has so entered and thereby accepted the grant, the estate is then, and not before, vested in him, and he is possessed." Bl. Com., 147  The same is stated, with great distinctness, on page 319.  This distinction is of no further importance here, than to show that a bare parol lease, for a year, is not good and effectual in England, and for the same reason is not good here, both countries having the same statute as to this particular point.  We have already said that, in England, if there is an entry by the lessee, the parol letting becomes a technical lease, and is good and effectual, if it does not exceed three years.

But, if all parol leases are void in Connecticut, and taking

possession is of no avail, at law, it is asked, how does the lease in question justify the charge of the court, that the plaintiff might keep possession until April?

As we have said, parol leases in England, exceeding three years, are void in all their provisions and stipulations, and no part of them can be sustained as leases; yet, inasmuch as there is, avowedly, a tenancy of some duration, the English statute provides that such leases shall have the force and effect of leases, and estates at will only. In England, as far back as Henry VIII., in the case of estates at will, where there is a general letting, some relation of landlord and tenant, the courts have held by judicial construction, or have established it as a rule of law, founded in general convenience and sound policy, that estates at will shall be estates from year to year, in order to avoid the effects of a sudden and unreasonable determination of the tenancy, and of deciding, in each case, what would be a reasonable time for the tenant to remove. *Doe* v. *Bell*, 5 Term., 471. *Clayton* v. *Blakey*, 8 Term., 3. 1 Cru. Dig., 284. *Schuyler* v. *Leggett*, 2 Cow., 663. *People* v. *Rickett*, 8 Cow., 231.

Some judges have thought, that the English courts go too far, in deciding that where the statute declares such estates shall be estates at will, they may be constructively transformed into estates from year to year; and in *Ellis* v. *Page*, 1 Pick., 43, the court of Massachusetts absolutely rejected this construction of their statute, which, in its provisions, is similar to the English, and held that, where the statute declares these estates shall be estates at will, they shall not be estates from year to year; and accordingly, they held that the tenant at will was not entitled to notice to quit, in conformity to the common law, (as they said,) though he was to be allowed a reasonable time for removing his family and property. Judges Jackson and Putnam dissented from this opinion, and insisted, that, as this clause of their statute was taken from the English statute, its construction and application should be taken, and adopted with it. Their opinions

are given at length in a note to the case of *Coffin* v. *Lunt*, 2 Pick., 70.

The question whether a tenant at will is entitled to notice, and if so, what notice, has been much discussed in the courts of this country, as the books will show; but, as we have no occasion to examine the point, we will not pursue this topic any further; for, be that as it may, we have no statute in Connecticut, and must treat the estate, acquired under a void lease, as a general estate at will, as held in England. Both parties agree that there is a tenancy here of some kind, and not an adverse holding; not a disseisin; not an estate at sufferance; not a valid lease for a definite time; and if we concede to the defendant what he asks, we get a tenancy, on which rent accrued, and one which must be held to have some character and duration. We hold it to be an estate at will; a tenancy which is derived from a general letting or general relation of landlord and tenant, and then we apply to such an estate, the well settled rule of law, that such an estate is from year to year—the rule which existed long before our ancestors came to this country, and which they brought with them, and incorporated into our jurisprudence, as founded in justice and sound policy—easy of application, certain and definite, and better for all parties than any other general rule which could be adopted. It was first applied to leases of cultivated lands, but for centuries it has been applied to houses and buildings generally, except the letting of rooms. An estate from year to year, by legal implication, is believed to be perfectly familiar to the judges and gentlemen of the bar, in Connecticut. *Bacon* v. *Brown*, 9 Conn. R., 334. *Lockwood et al.* v. *Lockwood et al.*, 22 Conn. R., 425. *Strong* v. *Crosby et al.*, 21 Conn. R., 398. *King* v. *Woodruff & Beach*, ante 56. 1 Sw. Dig., 36 and 94. This rule, however, is not to be applied so as entirely to exclude from consideration everything that was said, or agreed by the landlord and tenant, at the time of letting; for although no action can be brought upon any such execu-

tory contract, that which was said may be regarded, in fixing a proper rent, or a proper time for leaving the premises. This has been repeatedly decided in the English courts, and elsewhere ; we particularly refer to *Doe* v. *Bell*, 5 Term., 471. *Schuyler* v. *Leggett*, 2 Cow., 663. *People* v. *Rickert*, 8 Cow., 230. In *Doe* v. *Bell*, which was a parol lease for seven years, Lord Kenyon said : " Though the agreement be void by the statute of frauds, as to the duration of the lease, it must regulate the terms, on which the tenancy subsists, in other respects, as to rent, the time of year when the tenant is to quit, &c. So in 1 Cru. Dig., 284, and in many other books, this principle is repeated and approved, as good law, and fully established. In *Richardson* v. *Gifford*, 1 Adol. & El., 55, the doctrine would seem to be carried much further. The case was a parol lease, and void, being for more than three years. But there was an agreement that the tenant should make repairs ; in an action against him for not repairing, he was held liable to pay for breach of contract. *Beale* v. *Sanders*, 32 E. C. L. R., 357.

It is said, that if we adopt that part of the English rule, making estates at will, estates from year to year, we must adopt the whole rule, and hold that six months' notice is necessary, but this is not so ; our statute gives the landlord, in every case of holding over, a right, and the remedy, to regain possession in thirty days. This statute has ever been held in Connecticut, to do away with the English rule of six months' notice. 1 Sw. Dig., 95, Dut. ed.

Nothing more need be added, to vindicate the first part of the charge of the court. The second part is in the defendant's favor, and therefore he cannot complain. The third part has been commented upon, in the early part of this opinion, and shown, as we trust, to be unobjectionable and correct.

In the progress of the trial, the plaintiff, in connection with other evidence, introduced the order to Orin Chapman, to remove the plaintiff and his family, back to the place from

which they were taken.    It was offered only to identify time, for which it was clearly admissible, and went to the jury without any other claim.    This was correct.

Another question is made upon the rejection of the deposition of Manuel Garcie.    We think this point was for the judge's discretion, and cannot be reviewed.    It appears, that upon the deposition being offered, a question arose, whether the deponent had left the state.    The defendant insisted that he had, although he admitted that he did not go as was expected, but went immediately afterwards; the plaintiff insisted that he was still at home and offered evidence to that effect.    Undoubtedly, the certificate of the justice, who took the deposition, was *prima facie* evidence that the deponent was going to sea, but it being proved or agreed before the court, that he did not go, the parties were in controversy, as to the mere fact whether he had gone or not, and the defendant wished for time to get more evidence.    The judge did not feel bound, on this account, to postpone the trial, and we cannot say that he did not decide correctly.    The defendant was bound to have his proof in court, and if he had done this, and by it, could have satisfied the court, that the defendant was absent, at the time of trial, the deposition would undoubtedly have been received.    The motion, it is true, is so drawn, as to make the judge seem to say, that the deposition was rejected, because the specific absence in contemplation, when the deposition was taken, did not happen, though the deponent went immediately after.    We do not believe that the judge intended so to rule, or ought to be so understood.    He decided, as he clearly might do, that the trial should not be suspended to get more proof; and 'if an improper reason was given for the ruling, in the haste of the trial, or has got into the motion, as a part of the case, we do not, for such reasons, feel called upon to grant a new trial when the decision itself was right and proper.

                                We do not advise a new trial.

In this opinion Church, C. J., and Waite, J., concurred. Hinman, J., having tried the cause in the court below, was disqualified.

Storrs, J., concurred in the result, on the ground that the plaintiff is to be deemed to have been in the actual and peaceable possession of the premises, at the time of the trespass complained of; that the entry of the principal defendant, Avery, being forcible, was by force of our statute of forcible entry and detainer, unlawful, and therefore a trespass, as to the plaintiff; that it did not displace such possession of the plaintiff; that the possession claimed to have been obtained by said defendant, by means of his entry, was not a peaceable one; and that he, and the other defendants assisting him, had no right to maintain it against the plaintiff, or to expel him from the premises by force.

New trial not to be granted.