THE CITY COAL COMPANY *vs.* LOUIS MARCUS ET AL.

First Judicial District, Hartford, October Term, 1920.
WHEELER, C. J., BEACH, CASE, CURTIS and KEELER, Js.

A lease for a definite term may provide for a further tenancy in two ways: one, by means of a covenant to renew the lease for a stated period upon its expiration, thus evidencing the parties' intent to

City Coal Co. *v.* Marcus.

execute a new lease, and the other, by an agreement in the original lease for its extension for a prescribed period at the option of the lessee, a method by virtue of which the original lease is continued and the further tenancy validated, without any additional instrument, and in compliance with the statute of frauds.

In the present case a lease for a ten-year term gave the lessee an option to lease the premises on the same terms for a further period of ten years from the expiration of the original term. *Held* that this was clearly not an *extension* of the original lease, for a second period of ten years, as the lessee contended, but a covenant to renew for another and distinct term, requiring an exercise by the lessee of his option before the expiration of his original term, and contemplating at least the execution of a new written agreement.

A written notice of the lessee's intent to renew the lease may not be essential, but if he fails to seasonably exercise his right of option— as in the present case—he no longer has any such right.

After the expiration of the original ten-year period, December 31st, 1915, the lessee held over with the consent of the lessors until the latter part of 1919, when the premises were sold to the present owners, who gave notice to the lessee to quit on January 6th, 1920, and did not consent to its holding after December 31st, 1919. In an action of summary process it was *held:*—

1. That the holding-over by the lessee with the consent of the lessors in the several years between 1916 and 1919, inclusive, did not bring into existence an oral lease for ten years which the statute of frauds at once destroyed, nor did it, properly speaking, create any lease; but that the law created a tenancy from year to year, referable to the original written lease as determining the rent and other conditions.

2. That such tenancy was not continuous in its nature until one party or the other should, before the expiration of the year, give notice of his intention to terminate the tenancy at the end of that year, nor did a mere holding over by the tenant, without the consent of the landlord, operate to renew the lease for another year; that, on the contrary, each year constituted a recurring new term, and that unless the parties specifically renewed the lease for such a period, or an implied contract to that effect arose from their conduct, each was free from all obligation at the end of each year: the tenant free to leave without notice, and the landlord free to refuse to accept the tenant's holding over as creating a tenancy for another year.

3. That inasmuch as there was not only no evidence that the holding-over by the tenant after December 31st, 1919, was with the consent of the recent owners, but that the latter actively dissented thereto by their notice to quit of January 6th, 1920, there was no basis for an implied contract, and the case came within the clause

City Coal Co. *v.* Marcus.

in § 5099 which provides that no holding over by a lessee after the expiration of his term shall be evidence of any agreement for a further lease.

Argued October 5th—decided December 22d, 1920.

WRIT OF ERROR to reverse a judgment of the City Court of Hartford, *Bullard, J.*, in favor of the landlords in an action of summary process, brought by the tenant, the present plaintiff in error, to the Supreme Court of Errors at its October Term in Hartford, 1920. *No error.*

On January 1st, 1906, the heirs at law of Louis B. Plimpton, deceased, leased to G. U. Kierstead and R. Hackewessel, partners in business under the trade name of the City Coal Company (and apparently since incorporated under that name), certain real property in the city of Hartford forming the subject-matter of the present litigation, for a period of ten years from said date, at a yearly rental of $144 payable in monthly payments of $12 each. The lease contained a renewal option in the following words: "With the option in the parties of the second part, their heirs and assigns, to lease said premises upon the terms herein set forth for a further term of ten years from the first day of January, 1916." At the expiration of the term of ten years fixed by the lease, no written renewal lease was entered into by the parties, but the lessees continued to occupy the premises with consent of the lessors, upon the same terms as to rental provided in the lease, until December 31st, 1919.

In the latter part of the year 1919, the defendants in error had acquired title to the premises, subject to the leasehold rights of the plaintiff in error.

Said lessee thereafter continued to occupy the premises during the month of January, 1920, and on January 6th, 1920, the defendants in error caused a notice to

quit to be served upon the plaintiff in error, which notice was not complied with. The owners of the property, defendants in error in this court, then brought an action of summary process to the City Court of Hartford, which rendered judgment in favor of the complainants. The amended complaint in said action alleged an occupation under a lease terminating December 31st, 1919, a holding over and refusal to vacate. To this complaint the answer plead a general denial, and in a second defense set up the lease and privilege of renewal above referred to, a renewal in fact, and possession under the renewed lease.

The City Court of Hartford, in deciding said cause, held that the original tenancy of the defendant under its lease expired December 31st, 1915; that the option to renew therein given to lease the premises for a further period of ten years, was not exercised; that defendant at the expiration of the written lease with the consent of the then landlord held over; "that such holding over constituted a renewal of the original lease for a further term of ten years, but, as such lease was evidenced by the acts of the parties and not by writing, it was within the statute of frauds and became a lease at will, and by judicial construction a lease from year to year"; that for successive years from January 1st, 1916, the defendant continued to hold over with the consent of the landlords for the time being, up to and including the year ending December 31st, 1919, and that notice to quit was given as hereinbefore mentioned. The court concluded that § 5099 of the General Statutes, which provides that "no holding over by any lessee, after the expiration of the term of his lease, shall be evidence of any agreement for a further lease," applied to the case before it, and that as no evidence had been introduced showing that the last holding-over was with the consent of the plaintiffs, no new letting

was thereby created, and rendered judgment as above stated.

The plaintiff in error in the case now before this court made the following assignments of error: 1. "The court erred in holding that the lease in question was not a continuing one for twenty years. 2. The court erred in holding that the lease in question had to be renewed in writing. 3. The court erred in holding that the lease in question, which had been renewed by the acts of the parties, was only a lease at will and by judicial construction a lease from year to year. 4. If said lease was only a lease from year to year, then the court erred in holding that the notice marked 'Exhibit B' and served after December 31st, 1919, to wit, January 6th, 1920, was sufficient to terminate the lease from year to year. 5. The court erred in finding that a legal notice should not have been served upon the ———————— before December 31st, 1919."

In the bill of exceptions tendered and allowed in the City Court of Hartford, the claims of the plaintiff in error are stated in conformity with the above assignments of error, and the adverse rulings of the court thereon are set forth. The memorandum of judgment filed in the trial court is made part of the bill of exceptions.

*Francis P. Rohrmayer* amd *Abraham S. Bordon,* for the plaintiff in error.

*Samuel Rosenthal,* for the defendants in error.

KEELER, J. Based upon the foregoing assignments of error, the plaintiff in error in this court claims that the written lease in question was in fact a lease for twenty years if the lessee saw fit to so consider it. Or, if this claim be untenable, that a renewal was effected by the

acts of the parties for a second period of ten years, and that the original written lease complied with the requirements of the statute of frauds. Or, if the two claims last mentioned are untenable, that a tenancy from year to year came into being by operation of law, and that the holding over by the lessee into the month of January, 1920, initiated a new tenancy during the year 1920, and that the notice to quit given January 6th, 1920, was inoperative to terminate the tenancy.

Any lease, by agreement of the parties, may provide for a tenancy beyond the minimum term therein, in two well-recognized ways: one, by means of a covenant to renew the lease for a certain specified term upon the expiration of the term of the original lease, which covenant contemplates a further lease to be entered into by the parties; the other, by means of what are termed agreements for extension. These latter come into existence by use of a great variety of phrases, such as "the privilege of two more years if desired," or "with right to remain for a further period of——— if he so elect," or "the privilege of continuing this lease for———." When such expressions are used, the original lease operates as a continuous one, and the holding for a term exceeding the minimum provided in the agreement, does not require any additional instrument to give it validity. The statute of frauds is satisfied by the original lease, if it is one required to be in writing.

The authority cited by plaintiff in support of its contention that in this case the lease was for a period of twenty years (1 McAdam on Landlord & Tenant, § 157), relates to agreements for extension, and not to covenants for renewal, as plainly appears from the citations in the note supporting the text. But the agreement in the case under consideration is clearly not one of the class last considered. It is a covenant

to renew, stated in terms in frequent use. It affords the lessee the option "to lease said premises" for a "further term of ten years." The language clearly contemplates a further agreement, and, as the term stipulated is beyond the period of one year, a written agreement. It is not an agreement for further occupation, such as would attach to and become part of the original lease, but involves the creation of another term distinct from that provided for in the lease as executed. We held in *Renoud* v. *Daskam*, 34 Conn. 512, that, in order to secure the benefit of a covenant to renew, the lessee must make and signify his election so to do before the expiration of his original term. See also *Platt* v. *Cutler*, 75 Conn. 183, 52 Atl. 819. The trial court has expressly found as a matter of fact that the option of renewal given in the lease was not exercised. The first contention of the plaintiff is without merit.

Passing to the second claim of plaintiff, that a new lease for ten years was created, and that the same was not affected by the statute of frauds, we find authority cited to the point that no written notice was necessary of the lessee's intent to renew, which doubtless is true, but entirely irrelevant; that question does not arise upon the pleadings, and there is nothing in the finding of the trial court in that regard. The form of the notice required is not of consequence, but the necessity of an election, which is the real point involved, we have just considered.

In further support of this point, the finding in the case is relied upon to the effect that the holding-over by the lessee with the consent of the lessors, constituted a renewal of the lease for a further period of ten years, which lease was immediately avoided from the fact that it was oral, and became a lease at will and, by construction, a lease from year to year. It is very clear

that in this expression the trial court was stating a conclusion of law, and that the only fact found is that the lessee held over with the consent of the lessors. The trial judge came to the correct solution of the problem, in holding the resulting contract a lease from year to year, but by a wrong course of reasoning. The acts of the parties, when the lessee held over with the consent of the lessors, did not bring into existence an oral lease for ten years for one brief moment only, and then to be blighted and destroyed by the withering influence of the statute of frauds. No lease, properly so-called, was made by the parties by reason of the holding over with consent, but the law made one for them, that is, created a tenancy from year to year referable to the former written lease as determining the rent reserved and some other covenants peculiar to the property demised. "The agreement for a periodic tenancy arises by presumption of law out of the continued occupation and the payment of a periodic rent." Jones on Landlord & Tenant, § 180. It makes no difference whether the occupancy of the premises after the termination of the original lease was a mere holding-over, or whether at that time the parties made an unenforceable oral lease; the result is the same. *Larkin* v. *Avery*, 23 Conn. 304; *Corbett* v. *Cochrane*, 67 Conn. 570, 35 Atl. 509; *Griswold* v. *Branford*, 80 Conn. 453, 68 Atl. 987. The plaintiff, basing its contention upon the incorrect finding by the trial court that a new tenancy for ten years had actually been created, but in turn had been invalidated by the operation of the statute of frauds, attempts to avoid the effect of the statute by claiming that the terms of the latter had been complied with by the original written lease, in connection with the subsequent holding-over. Thus the real ground of this second claim harks back to the first ground, of a lease for twenty years contained

in the original instrument, a contention which we have shown to be ill founded.

The third claim of the plaintiff in error is that, assuming the invalidity of its first and second claims, there still emerged from the transaction a tenancy from year to year, continuous in its nature, unless and until one party or the other should give notice of intention to terminate before the expiration of any given year, and that a holding-over by the tenant operates to renew the lease for another year.

There is some authority for this position in English decisions and some American cases, and in the early development of doctrine in regard to such tenancies there is considerable confusion. The position, however, which has the greatest support from modern cases, makes a distinction between holding over from year to year after the determination of a prior definite lease, and a holding-over after some other form of tenancy. In the former case it is held that each year constitutes a recurring new term for that period, and unless the parties specifically renew the lease for such a period, or so conduct themselves that from their conduct a renewal may be implied by law, the tenancy terminates, and each party is free from any obligation thereunder. Leading cases to this effect are *Gladwell* v. *Holcomb*, 60 Ohio St. 427, 54 N. E. 473; *Adams* v. *City of Cohoes*, 127 N. Y. 175, 28 N. E. 25; *Kennedy* v. *City of New York*, 196 N. Y. 19, 89 N. E. 360. The case first cited, after a careful discussion of the authorities, states the following conclusion: "As the assent of both parties is necessary to the creation of this new contract at the beginning of each year, it is obvious that if the tenant chooses not to hold over, and vacates the premises at the end of any year, the tenancy ceases without liability for rent for the ensuing year, though no notice of his intention to remove be given, as certainly as it

does upon the expiration of a lease expressly made for a specific term. So it does, though he hold over, unless the landlord chooses to accept him as a tenant for another year. By remaining in possession without any new arrangement, the tenant is regarded as offering to take the premises for another year upon the terms of his tenancy which has just expired. But the landlord is not bound to accept the offer; and unless he does so, by receiving rent, or some other act of assent or acquiescence, the tenancy is thus terminated, and notice of his intention not to renew it for another year is unnecessary. The holding over after the end of any year, without the landlord's consent, is equivalent to holding over after the expiration of a lease for a specific term. And, if the landlord does not choose to accept the proffered tenancy for another year, he is at liberty to treat the occupant as a trespasser, and may maintain ejectment against him, without previous notice of his intention not to prolong the tenancy. This result necessarily follows from the fact that the tenancy terminates at the close of the year, unless the parties by some new agreement, express or implied, extend it for a longer period." The New York cases above cited arrive at the same conclusion by an analogous course of reasoning. The same rule is formulated in 16 R. C. L. pp. 1167, 1168, § 689, and in 24 Cyc. 1012, and note 21 contains extensive citation of supporting authority. An examination of our own decisions leads to the conclusion that the law of Connecticut is in substantial accord with the doctrine above considered. In *Larkin* v. *Avery*, 23 Conn. 304, 317, this court said: "It is said, that if we adopt that part of the English rule, making estates at will, estates from year to year, we must adopt the whole rule, and hold that six months' notice is necessary, but this is not so; our statute gives the landlord, in every case of holding over, a right, and

the remedy, to regain possession in thirty days. This statute has ever been held in Connecticut, to do away with the English rule of six months' notice." The statute referred to is that relating to summary process, and is the same as that now in force, except that the period of notice has been abbreviated to ten days by more recent legislation. As correctly interpreting the law of this State, the court, at the conclusion of the paragraph just quoted, cites 1 Rev. Swift's Digest, 95. In the passage cited the author, after considering the nature of tenancies from year to year resulting from holding over by the tenant, and the various methods adequate to determine the tenancy, adds the following general summary: "So in all cases he may at any time, after the expiration of the lease, bring his action, on giving thirty days' notice, provided he has done no act which will amount to an express, or implied assent, to the continuance of the lease." *Miller & Co.* v. *Lampson,* 66 Conn. 432, 34 Atl. 79, was an action coming to this court from the District Court of Waterbury, which had in turn considered the same upon a writ of error from a judgment of a justice of the peace in an action of summary process. It appears from the facts stated in the opinion, that the tenants and their predecessors in title had been in possession of the leased property since May 1st, 1887, by successive holdings-over until some time in the year 1894, when the action to dispossess was brought. The tenants requested the presiding magistrate in the action of summary process to charge the jury as follows: "One who enters into the possession of real estate under an agreement for one year or more, who continues in possession, paying a yearly rent therefor, which is accepted as such, becomes a tenant from year to year; and if such tenant be suffered by the landlord to continue in possession without any new arrangement, he must be taken to assent

to the continuance of the old arrangement on the original terms." This request was refused, and the magistrate charged the jury upon this point as follows: "The defendants claim it was a lease for one year; that holding over after the expiration of the year renews the lease for another year; but I say to you that merely holding over is not evidence of a lease for another year; that you must find some other evidence, showing a meeting of minds on a new lease for another year." This court held that the refusal of the trial court to charge as requested, and the charge as given, were correct. It may be noted here, that the request to charge, above quoted, states exactly the position taken by the plaintiff in the case at bar, in both argument and brief. In the case before us, the trial court has expressly found that "as no evidence was introduced showing that the last holding over was with the consent of the plaintiffs, no lease was created by the defendant's holding over," since the case came within the operation of General Statutes, § 5099, which provides that no holding-over by a lessee after the expiration of his term shall be evidence of any agreement for a further lease. From other facts found it is fairly inferable that not only was there no consent by the landlords to the holding-over, but a very active and timely dissent by service of a notice of termination and to quit January 6t' , 1920, six days after the termination of the lease. It should be noticed in this connection that the defendants in error had only become owners of the reversion in the latter part of the year 1919, and that no implication can arise in this connection from the course of dealing between the tenant and former landlords.

There is no error.

In this opinion the other judges concurred.