MARY ELIZABETH DORSEY, ET AL.
vs.
THE RUSTIC DINER, INC.

Superior Court    New Haven County    File #48382

Present:   Hon. JOHN A. CORNELL, Judge.

John E. Downey,                    Attorney for the Plaintiff.

Joseph Weiner,                     Attorney for the Defendant.

## MEMORANDUM FILED NOVEMBER 9, 1935.

CORNELL, J.   The application represents that one of the assets of the receivership estate is a "diner".   The evidence describes the latter as a wooden structure placed partly upon a concrete foundation and in part upon the land of Gerald McKeon, et als, and used in the business of the corporation for preparing and serving food.

Both foundation and superstructure were erected on the premises in question after the execution and delivery of a written lease of the premises executed by said Gerald McKeon as lessor to Christopher Kitsos and George Deligan on October 10, 1932, at some unnamed time after which date, Deligan assigned his interest in the lease to Kitsos.

The question propounded for advice is, in essence, has the receiver the right to remove the structure from the leased premises, or in other words, is the diner a trade fixture?

While evidence was introduced descriptive of the way in which the diner was built and affixed to the realty, as well as indicative of the circumstances surrounding its placement there and the situation of the parties at the time, it appears that the answer to the question asked depends on other factors than the intention of the parties at the time the building was constructed.

Thus the lease, which it is claimed was either assigned to the corporation or as to which it may in equity be determined to have been, was for the term of one year from November 15, 1932, with an option to the lessee to "renew" at a stipulated increased rental for a further period of two years "provided that written notice shall be given said lessor at least thirty days before the expiration of this lease".

The evidence is that no "written" notice was ever given to the lessor by the lessee or the corporation as the claimed assignee, of an intention to "renew" the lease, and that no writing was ever executed by the lessor, evidential of an effectuation of a design to "renew".

Under such circumstances, no "renewal" of the lease, has been effected. **City Coal Co. vs. Marcus, 95 Conn. 454, 460.**

There is, however, evidence that in default of a compliance with the terms and express intention of the lease in the respect noted, there was an oral agreement that the lease should "continue" for a further period of two years following its expiration, but at a rental of $40.00 per month.

This agreement, of course, was within the inhibition of the statute of frauds, **General Statutes, Rev. 1930, #5982.** And since the lessor has personally indicated that he will not re-lease the property to the corporation and will claim ownership of the "diner" if under all the circumstances he may be legally entitled to it, it may be fairly assumed that he will not fail to invoke the aid of the statute if he is required to do so.

The most that could have arisen from the oral promise of the lessor to "continue" the lease for a period of two years from the date of its expiration was a tenancy from year to year the terms of which were referable to the written lease. **City Coal Co. vs. Marcus, supra, 461,** insofar as such terms were applicable to such a tenancy, except as modified by the parties, themselves.

The lease is silent as concerns the lessee's right to remove the diner upon its termination. It follows that if such person possessed that right it could be exercised, in any event, only prior to the expiration of the period for which the land was leased, "in the absence of facts showing an equitable right to remove them at a later period." **Webb vs. New Haven Theatre Co. 87 Conn. 129, 136.**

Since the lease by its provisions contemplated a "renewal" as contradistinguished from a "continuance", it foresaw a new lease at its expiration if the lessee took advantage of its provisions in that respect. **City Coal Co. vs. Marcus, supra, 460.** However that may be, it is clearly evident that whatever the effect of the transaction as a result of which lessee's con-

tinued occupancy ensued, their relationship was attended by a tenancy of another variety and correspondingly different legal incidents than was the case under the written original lease.

From all of which it necessarily follows, that if otherwise entitled to remove the diner, the right to do so was forfeited by failure to invoke that right prior to the termination of the original lease and by neglecting to stipulate that the right to remove it should inhere in it under the new and succeeding tenancy. The evidence is barren of facts from which it might be argued that any equity arose in lessee's favor, under such circumstances which would confer a right to move the diner "at a later period".

If, therefore, the lessor continues in his announced design of claiming the diner, if he has the legal right to do so, the receiver is advised not to attempt to remove same from the leased premises.

Whether, if the directors of the corporation in due season voted or agreed to renew the lease and delegated one of its officers to do what was necessary to carry such action into effect, or without such specific delegation, it became such officer's duty to do so, and as a result of his failure so to do, or his negligent performance of such duty, a loss has been incurred by the corporation or the receivership estate, such officer would be liable to the receiver, is a question not presented by the instant application.

---

## SUPPLEMENTAL MEMORANDUM
### FILED NOVEMBER 30, 1935.

CORNELL, J. This motion was granted from the Bench and the plaintiffs permitted to introduce such additional evidence as they desired with the design of establishing that the option contained in the lease to the premises upon which the diner owned by the defendant corporation, stands, was exercised.

The evidence falls short of showing, even if it could be found that the notice of intention to renew was given the lessor, that a new lease in writing for the additional term was ever entered into.

The distinction is pointed out in **City Coal Co. vs. Marcus, 95 Conn., 454, 459,** between a covenant to extend or continue a lease and one to renew it. As demonstrated in the opinion in that case, no new lease is required to be executed if the covenant be one to extend or continue.

In such case the original term coupled with the additional one is treated as one and the provisions of the statute of frauds satisfied by the writing originally signed by the parties.

Where, however, as here, the covenant be one "to renew" it contemplates the execution of a new lease upon the expiration of the original one and if the term of renewal be for a period exceeding one year a written lease is required to comply with the provisions of the statute of frauds.

When, as in the instant case, no written lease is entered into after the expiration of the first, the law makes a new lease for the parties, since they, themselves have failed to do so, in that it creates for them a tenancy from year to year referable to the former lease as respects the terms. **City Coal Co. vs. Marcus, supra, p. 461,** except as the parties by mutual agreement may modify such terms.

It must consequently be held that the defendant corporation has held occupancy of the premises following the expiration of the former written lease on November 14, 1933, for two successive terms of one year each, each of which constituted a distinct tenancy. Ordinarily the right to remove the fixtures where the lease is silent on the subject would terminate, if not exercised before, with the ending of the first term on November 14, 1933, and the right to remove them thereafter would not exist.

In the instant case, two tenancies have expired without the right of removal being exercised and equally without any agreement, so far as the evidence shows, by which the right of removal has been saved to the lessee.

Under all the circumstances there appears to be no reason for modifying the conclusion reached in Memorandum of November 7, 1935.